**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORTH WORTH DIVISION**

| | |
|---|---|
| DATA MARKETING PARTNERSHIP, LP, et al., | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Civil Action No. 4:19-cv-00800-O ) |
| UNITED STATES DEPARTMENT OF LABOR, et al., | ) ) ) |
| Defendants. | ) ) ) |

## BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Jonathan D. Crumly, Sr.
*Pro Hac Vice*
**Freeman Mathis & Gary, LLP**
100 Galleria Parkway, Suite 1600
Atlanta, GA 30339
Tel: 770.8180000
Fax: 770.937.9960
Email: Jonathan.Crumly@fmglaw.com

Robert G. Chadwick, Jr.
Texas Bar No. 04056075
**Freeman Mathis & Gary, LLP**
7160 Dallas Parkway, Suite 625
Plano, Texas 75024
Tel: 469.895.3003
Fax: 888.356.3602
Email: bob.chadwick@fmglaw.com

Michael L Jones
Texas Bar No. 10929460
**Law Office of Michael Jones**
16901 Dallas Parkway, Suite 202
Addison, TX 75001
Tel: 214-954-9700
Email: mjones@henryandjones.com

**COUNSEL FOR PLAINTIFFS**

**TABLE OF CONTENTS**

I.      PROCEDURAL HISTORY..............................................................................................3

II.     STATEMENT OF UNDISPUTED MATERIAL FACTS ...............................................5

III.    SUMMARY JUDGMENT STANDARD .......................................................................9

IV.     THE LIMITED PARTNERS OF DMP ARE "WORKING OWNERS" ........................9

V.      THE LIMITED PARTNERS OF DMP ARE "BONA FIDE PARTNERS"...................22

VI.     PERMANENT INJUNCTIVE RELIEF IS STILL WARRANTED ...............................23

VII.    CONCLUSION..............................................................................................................26

# TABLE OF AUTHORITIES

Page(s)

**CASES**

138 S.CT. 1942 (2018) ........................................................................................................ 23

ADVISORY OPINION 2006-04A ............................................................................................. 15

ALTIRIS V. SYMANTEC CORP.,
   318 F.3D 1363 (FED.CIR. 2003) .................................................................................... 14

ANDERSON V. HMO LOUISIANA, INC.,
   2023 WL 3477325 (E.D. LA. MAY 16, 2023) ..............................................20, 22, 23

ANDERSON V. LIBERTY LOBBY, INC.,
   477 U.S. 242 (1986) ........................................................................................................ 9

AUER V. ROBBINS,
   519 U.S. 452 (1997) ...................................................................................................... 21

BENISEK V. LAMONE,
   ___ U.S. ___ .................................................................................................................. 23

BURGESS V. FED. DEPOSIT INC., CORP.,
   871 F.3D 297 (5TH CIR. 2017) .................................................................................... 24

C.I.R. V. CULBERTSON,
   337 U.S. 733 (1949) ....................................................................................20, 22, 23

CELOTEX CORP. V. CATRETT,
   477 U.S. 317 (1986) ........................................................................................................ 9

CLARK V. PRICHARD,
   812 F.2D 991 (5TH CIR. 1987) .................................................................................... 23

DATA MARKETING PARTNERSHIP, LP V. U.S. DEPT. OF LABOR,
   45 F.4TH 846 (5TH CIR. 2022) ............................................................................ PASSIM

DATA MARKETING PARTNERSHIP, LP V. U.S. DEPT. OF LABOR,
   490 F.SUPP.3D 1048 (N.D.TEX. 2020) ............................................................... PASSIM

DELANEY V. FIDELITY LEASE LTD.,
   517 S.W.2D 420 (TEX.APP.- EL PASO 1974) ............................................................ 17

DOL,
   ADVISORY OPINION 2020-01A ...................................................................................... 1

GOBEILLE V. LIBERTY MUTUAL CO.,
   577 U.S. 312 (2016) ...................................................................................................... 26

MASS. MUT. LIFE INS. CO. V. U.S.,
   782 F.3D 1354 (FED. CIR. 2015) ................................................................................ 21

NATIONWIDE MUT. INS. CO. V. DARDEN,
   503 U.S. 318 (1992) ...................................................................................................... 14

NEW YORK V. D.O.L.,
   363 F.SUPP.3D 109 (D.D.C. 2019) ............................................................................ 16

NKEN V. HOLDER,
   556 U.S. 418 (2009) ...................................................................................................... 25

OVERTON V. WILKIE,
   30 VET APP. 257 (2018) .............................................................................................. 21

RAYMOND B. YATES, M.D., P.C. PROFITING SHARING PLAN V. HENDON,
   541 U.S. 1 (2004) ................................................................................................. PASSIM

iii

*RUSSELLO V. U.S.*,
    464 U.S. 16 (1983) ..........................................................................................12, 13, 14
*STATE OF TEX. V. SEATRAIN INT'L, S.A.*,
    518 F.2D 175 (5TH CIR. 1975) ........................................................................ 23
809 F.3D ........................................................................................................ 24
933 F.3D ........................................................................................................ 25
*U.S. V. WONG KIM BO*,
    472 F.3D 720 (5TH CIR. 1972) ........................................................................ 12
*WINTER V. NAT. RES. DEF. COUNCIL, INC.*,
    555 U.S. 7 (2008) ......................................................................................... 23

## STATUTES

26 U.S.C. § 401(c)(1)(B) ............................................................................... 12
26 U.S.C. § 401(c)(4) .................................................................................... 11
29 U.S.C. § 1101(a)(2) ............................................................................ 10, 12
29 U.S.C. § 1103(b)(3)(A) ............................................................................. 10
29 U.S.C. § 1108 ........................................................................................... 11
29 U.S.C. § 1144 ........................................................................................... 26
29 U.S.C. § 1191a(d)(1) ................................................................................ 19
29 U.S.C. § 1191a(d)(3)(A) ........................................................................... 19
29 U.S.C. § 1301(b)(1) .................................................................................. 11
29 U.S.C. § 1321(b)(5)(A) ............................................................................. 11
29 U.S.C. § 1321(b)(5)(B) ............................................................................. 11
29 U.S.C. § 1321(b)(9) .................................................................................. 11
29 U.S.C. § 1132(a)(3) and 1132(k) ............................................................... 1

## RULES

FED. R. CIV. P. 56(A) ...................................................................................... 9
FEDERAL RULE OF CIVIL PROCEDURE 5(B)(2) .............................................. 27

## REGULATIONS

29 C.F.R. § 2590.732(D)(2) .................................................................PASSIM
83 FED.REG. ................................................................................................ 16

**PLAINTIFFS' BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Plaintiffs Data Marketing Partnership, LP ("DMP") and LP Management Services, LLC ("LPMS")(DMP and LPMS collectively referred to as "Plaintiffs"), file this Brief in Support of their Motion for Summary Judgment (the "Motion") pursuant to Fed.R.Civ.P. 56, 29 U.S.C. §§ 1132(a)(3) and 1132(k). In the Motion, Plaintiffs seek judgment as a matter of law against Defendants United States Department of Labor ("the DOL"), Acting Secretary of Labor Julie A. Su, in her official capacity only (the "Secretary"), and the United States of America ("USA")(DOL, the Secretary and USA collectively referred to as "Defendants'), respectfully showing the Court as follows:

**INTRODUCTION**

This case arises out of an adverse advisory opinion issued by the DOL, Advisory Opinion 2020-01A ("Advisory Opinion"), as to a single-employer, self-insured, group health plan (the "Plan") established by DMP. The Advisory Opinion concluded (1) the Plan is not governed by any title of the Employee Retirement Income Security Act ("ERISA"), (2) the limited partners of DMP are not "working owners" or "bona fide partners" under ERISA entitled to be "participants" in the Plan, and (3) one common-law employee is not a sufficient basis for the Plan to cover any number of Limited Partners.

In a *Memorandum Opinion and Order* dated Sept. 28, 2020 [Doc. 37], this Court granted *Plaintiffs' Motion for Summary Judgment* [Docs. 23, 24] as to the Advisory Opinion. *See Data Marketing Partnership, LP v. U.S. Dept. of Labor*, 490 F.Supp.3d 1048 (N.D.Tex. 2020). The *Memorandum Opinion and Order* set aside the Advisory Opinion as arbitrary and capricious. The *Memorandum Opinion and Order* also issued a two-prong injunction enjoining Defendants from (1) refusing to acknowledge the single employer ERISA-status of the Plan, and (2) refusing to recognize DMP's limited partners as "working owners" of DMP.

1

On appeal, the Fifth Circuit affirmed this Court's vacatur of the Advisory Opinion. *See Data Marketing Partnership, LP v. U.S. Dept. of Labor*, 45 F.4th 846, 860 (5th Cir. 2022). The Fifth Circuit, however, vacated the permanent injunction "without opining whether such relief might be appropriate." *Id*. The Fifth Circuit determined the propriety of such an injunction turns on interpretive questions this Court must further address on remand. *Id*. These interpretive questions only address the second prong of this Court's injunction; none of the interpretive questions address the first prong of the injunction.

The first interpretive question remanded by the Fifth Circuit is whether all of the factors recognized by the Supreme Court in *Raymond B. Yates, M.D., P.C. Profiting Sharing Plan v. Hendon*, 541 U.S. 1 (2004), including the various provisions of ERISA and the Internal Revenue Code ("IRC"), combine to make the limited partners of DMP "working owners" who qualify as participants of the Plan. In this regard, the summary judgment record is sufficiently complete to answer this question in the affirmative.

The second interpretive question remanded by the Fifth Circuit is whether the totality of circumstances make the limited partners of DMP "bona fide partners" who qualify as participants of the Plan. In this regard, the Fifth Circuit also said this Court should consider whether the DOL forfeited the argument for *Auer* deference as to interpretation of applicable regulations. Again, the summary judgment record is sufficiently complete to answer both questions in the affirmative.

In the final analysis, the permanent injunction ordered by this Court on Sept. 28, 2020 was correct. The Fifth Circuit remanded to this Court solely for a more detailed explanation to support the second prong of the injunction. To that end, Plaintiffs file this Brief to assist the Court in reissuing the injunction, supported by the more comprehensive analysis mandated by the Fifth Circuit.

# PROCEDURAL HISTORY

## I.   ADVISORY OPINION AND FIRST DISTRICT COURT ORDER

In response to a request by Plaintiffs, and a suit filed in this Court, the DOL issued the Advisory Opinion. Thereafter, Plaintiffs amended pleadings in this Court to seek vacatur and injunctive relief regarding the Advisory Opinion [Doc. 9].

On Sept. 28, 2020, this Court entered a *Memorandum Opinion and Order*. The Order vacated the Advisory Opinion "as arbitrary and capricious under the [Administrative Procedure Act] as contrary to law under ERISA" [Doc. 38] The Court specifically found that the Limited Partners were "working owners," and "that the presence of a single common law employee may extend ERISA coverage to any number of working owners." *See Data Marketing Partnership, LP*, 490 F.Supp.3d at 1068. The Order also permanently enjoined the DOL "from refusing to acknowledge the ERISA-status of the Plan or refusing to recognize the Limited Partners as working owners of" Data Marketing.

The DOL appealed to the Fifth Circuit [Doc. 40].

## II.   FIFTH CIRCUIT OPINION AND MANDATE

On Aug. 17, 2022, the Fifth Circuit issued a mandate which provided:

"IT IS ORDERED and ADJUDGED that the judgment of the District Court is AFFIRMED IN PART, VACATED IN PART and REMANDED to the District Court for further proceedings in accordance with the opinion of this Court."

The part of the District Court's judgment affirmed by this mandate was the vacatur of the DOL's advisory opinion. In this regard, the Fifth Circuit opined:

"The default rule is that vacatur is the appropriate remedy." [Citations omitted]. The [DOL] makes no developed argument that the district court abused its discretion in following the default rule so the [DOL] forfeited the argument. [citations omitted] We therefore uphold the court's vacatur."

*Data Marketing Partnership. LP,* 45 F.4th at 859-60.

3

The part of the District Court's judgment remanded for further proceedings by this mandate related to the permanent injunction issued by this Court. In this regard, mandate was remanded "so that the *district court* may address certain interpretive questions in the first instance [emphasis added]" as to two relevant terms in the advisory opinion: "(1) 'working owner' and (2) 'bona fide partners.'" *Id*. at 858.

Citing *Yates,* the question remanded to the District Court as to the term "working owner" is "whether all of the *Yates* factors, including the various provisions of ERISA and IRC, combine to make these particular working owners qualify as plan participants." *Data Marketing Partnership, LP*, 45 F.4th at 858.

Citing 29 C.F.R. § 2590.732(d)(2), the Fifth Circuit remanded two questions to the District Court as to the term "bona fide partners." First, the Fifth Circuit found that the "district court did not appear to apply a totality-of the-circumstances inquiry", as required by the regulation; the Court thus also stated "we believe it best to remand for the district court to apply the totality-of-the-circumstances inquiry in the first instance." *Id*. at 859. The Fifth Circuit also instructed: "On remand, the district court should also consider whether the [DOL's] interpretation of the regulation warrants *Auer* deference or whether the [DOL] forfeited the argument for such deference [emphasis added]." *Id*.

The part of the District Court judgment vacated by this mandate was the permanent injunction. In this regard, the Fifth Circuit opined: "This injunction … turned on the interpretive questions that the district court must further address on remand." *Id*. at 860. The Court added: "So we vacate this injunction without opining on whether such relief might be appropriate." *Id.*

4

**STATEMENT OF UNDISPUTED MATERIAL FACTS[1]**

I.  **OVERVIEW OF LPMS AND DMP RELATIONSHIP AND BUSINESS[2]**

DMP is a partnership duly registered and formed in the State of Texas.[3] The primary business purpose of DMP is the production, capture, segregation, aggregation, anonymization, organization, and sale to third parties of electronic data generated by its partners.[4] The generation and aggregation of electronic data transmitted by each limited partner ("Limited Partner") represents the most significant, income-generating commodity which DMP seeks to sell to third parties.[5] To succeed, this business model requires large numbers of Limited Partners contributing data to the partnership.[6] The Limited Partners are compensated for, control and manage the production, capture, segregation, aggregation, and sale of, data they individually produce, empowering Limited Partners in a manner not otherwise available to them.[7] LPMS, the general partner of DMP, manages DMP's day-to-day operations. DMP is wholly controlled and operated by LPMS and its

---

[1] The evidentiary support for these facts is set forth in the Appendix to *Plaintiffs' Brief in Support of Motion for Summary Judgment [*Doc. 24] previously filed with this Court on Feb. 19, 2020.

[2] All of the facts concerning partnership governance, business activity and the self-insured single-employer group health plan of DMP are equally applicable to all other LPMS-managed limited partnerships. For sake of clarity and brevity, Plaintiffs will only include such information concerning DMP; however, all such facts apply to the other LPMS-managed limited partnerships.

[3] A true and correct copy of the FAC is included in the Appendix at App. pp. 21 – 52; *See also*, App, p. 55, ¶ 13.

[4] A true and correct copy of the Declaration of Randall W. Johnson is included in the Appendix at App. pp. 53 – 58. Plaintiffs acknowledge that this declaration was first submitted in this lawsuit in conjunction with Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction and was not part of the record before DOL when it issued its AO Response. The Declaration is offered to provide sworn testimony of the facts contained in the AO Request, App. p. 7, and to perfect the evidentiary record before this Court in compliance with the applicable rules pertaining to motions for summary judgment. *See* App. p. 54, ¶ 7.

[5] App. p. 28, ¶ 35.

[6] App. p. 54, ¶ 8.

[7] App. p. 56, ¶ 17.

Limited Partners.[8] DMP also employs common law employees to administer day to day operations, engage prospective buyers of the partners' work product, and enhance the software developed and owned by DMP.[9]

After the submission of the AO Request and in reliance on various favorable representations made by representatives of the DOL, DMP established a single-employer, self-insured, group health plan (the "Plan") to attract, retain, and motivate talent in service of DMP's primary business purpose.[10] The Plan reflects the substantial commitment DMP makes to its eligible plan participants, who are comprised solely of DMP's employees and Limited Partners (as well as their eligible spouses and dependents). Since this Plan is formed and sponsored only by DMP – and no other employer serves as a Plan sponsor and no employee of any other Plan sponsor participates in the Plan – the Plan is a single-employer, self-insured group health plan. DMP serves as the Named Fiduciary and Plan Administrator of the Plan.[11] The Plan automatically covers all common law employees and is available to provide coverage for the Limited Partners if they opt to participate and meet the participant eligibility criteria.[12] As of Jan. 30, 2020, nearly 50,000 Americans were either automatically enrolled as eligible common law employees, or opt to join a plan after signing a joinder agreement as a partner either of DMP or of one the other LPMS-managed partnerships sponsoring health plans.[13] The plans are designed to be "single-employer plans" covered by ERISA and are not Multiple Employer Welfare Arrangements (MEWAs).

---

[8] App. p. 55, ¶ 12.

[9] App. p. 56, ¶ 19.

[10] App. pp. 56 – 57, ¶¶ 20, 23 and 24.

[11] App. p. 29, ¶ 40.

[12] App. p. 57, ¶ 21.

[13] *Id.* at ¶ 23.

The Limited Partners of DMP are individuals who have obtained an ownership interest through the execution of a joinder agreement with DMP.[14] Limited Partners also participate in global management issues through periodic votes of all partners. Any payments made by DMP to Limited Partners for their revenue-generating activities are reported to the IRS as guaranteed payments and are subject to employment taxes. To be eligible to participate in the Plan, each Limited Partner must contribute at least five hundred (500) hours of work per year through the generation, transmission, and sharing of their marketable electronic data ("Partner Eligibility Requirement").[15]

In order to generate the necessary electronic data to provide for the primary business purpose of the partnership, Limited Partners enrolling in the Plan meet their Partner Eligibility Requirement by installing proprietary software for computers and mobile applications on the computers and mobile devices they choose to use to generate data for the partnership.[16] This software captures the electronic data generated by the partners as they use the application on their computers and/or mobile devices and transmits it to a "data bank" maintained by the partnership. The aggregated electronic data collected from the Limited Partners of all of the member limited partnerships is then anonymized and organized for marketing to third-party purchasers.

## II.   DMP PLAN SUMMARY

In an effort to attract, retain, and motivate talent in service of DMP's primary business purpose, DMP established the Plan. The Plan reflects the substantial commitment that DMP is making to its eligible plan participants, who are comprised solely of DMP's employees and partners (as well as their eligible spouses and dependents).

---

[14] App. p. 9; App. p. 55, ¶ 11.

[15] App. p. 8; App. p. 55, ¶¶ 12, 15; App. p. 56, ¶ 18.

[16] App. p. 56, ¶ 16.

7

The Plan has a number of third-party vendors which DMP engaged to administer the Plan. First, DMP hired a consulting and benefits design firm for guidance and assistance with fulfilling plan requirements pursuant to ERISA and related statutes. Second, DMP appointed a licensed and bonded Third Party Administrator ("TPA") to collect and allocate funds, adjudicate claims, manage claims' appeals, execute the payment of claims for benefits under the Plan, and perform other traditional services performed by a TPA. Third, DMP appointed a benefits administrator to assist its staff in managing eligibility data and plan participant customer service issues on an ongoing basis. Fourth, DMP created a Trust to hold any plan assets related to the Plan. Finally, DMP obtained a reinsurance policy for the Plan. This reinsurance policy is of a comprehensive and specific nature, as described more fully below.

The terms of the Plan are outlined in a Plan Document and are intended to comply with ERISA, including but not limited to, Parts 1, 4, 5, and 7. This Plan Document contains information on the benefits provided by the Plan-to-Plan participants; eligibility information; instructions on claims for benefits; claims appeals information; coordination of benefits provisions; disclaimers concerning certain federal statutes; and other information. With respect to eligibility, the Plan Document notes that *both* employees *and* partners meeting the Partner Eligibility Requirement are eligible to participate in the Plan. At least one common law employee participates in the Plan, as well as a number of partners, although not all partners will necessarily participate or meet the Partner Eligibility Requirement to participate in the Plan. DMP pays 100% of the premiums for coverage under the Plan for its common law employees. Partners are responsible for paying their own monthly program costs for coverage under the Plan. The enrollment procedures outlined in the Plan Document require annual Open Enrollment periods and Special Enrollment periods, consistent with applicable law, to permit eligible plan participants to join the Plan.

8

The aforementioned third-party vendors service the Plan as their delegated duties require. For example, the TPA collects monthly program cost payments from the Plan's participants. The TPA allocates these funds appropriately, routing plan assets to the Trust (which is solely controlled by a Directed Trustee), paying vendors their fees, and ensuring premium payments are timely made to the reinsurance carrier underwriting the Plan's reinsurance policy.

## SUMMARY JUDGMENT STANDARD

Courts "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

## THE LIMITED PARTNERS OF DMP ARE "WORKING OWNERS"

I.   DEFINITION OF "WORKING OWNER"

ERISA includes no mention of the term "working owner," much less a definition of the term. Guidance for defining the term is nevertheless found in ERISA and the Internal Revenue Code ("IRC"), ERISA jurisprudence, the established meaning of the term, and guidance issued by the DOL.

A.   ERISA and IRC

1.   STATUTORY HISTORY

"Congress enacted ERISA against a backdrop of IRC provisions that permitted corporate shareholders, partners, and sole proprietors to participate in tax-qualified pension plans." *Raymond B. Yates, M.D., P.C. Profit Sharing Plan v. Hendon*, 541 U.S. 1, 12 (2004). "Working shareholders have been eligible to participate in such plans since 1942. [citation omitted]." *Id.* "Two decades

later, still prior to ERISA's adoption, Congress permitted partners and sole proprietors to establish tax-favored pension plans, commonly known as 'H.R. 10' or 'Keogh' plans." *Id.* at 13. Thus, by 1962, working owners of all kinds could contribute to tax-qualified retirement plans. *Id*.

"ERISA's enactment in 1974 did not change that situation." *Id*. Rather, Congress' objective was to harmonize ERISA with longstanding tax provisions. *Id*.

### 2.   TITLE I OF ERISA AND RELATED IRC PROVISIONS

"Title I of ERISA and related IRC provisions expressly contemplate the participation of working owners in covered benefit plans." *Yates*, 541 U.S. at 14. "Title I of ERISA contains multiple indications, albeit indirect, that Congress assumed that a 'working owner' could be a 'participant' in an employee benefit plan sponsored by the business in which that working owner held an ownership right, regardless of the legal form in which the business was operated." *Pension and Welfare Benefits Admin., U.S. Dept. of Labor, Advisory Opinion 99-04A*. "For example, Section 401(a)(2) exempts certain partnership agreements from the [Act's] fiduciary provisions." *Id. See also* 29 U.S.C. § 1101(a)(2); *Yates*, 541 U.S. at 13. "This exemption would be meaningless if the partnership agreements themselves (which cover only partners, one of the categories of 'working owners') were not otherwise covered by Title I." *Id*.

"Further, section 403(b)(3)(A) specifically exempts from the trust requirement of section 403(A) a plan 'some or all of the participants of which are employees descried in section 401(c)(1) of the [IRC] [emphasis added]." *Id*. See also 29 U.S.C. § 1103(b)(3)(A); *Yates*, 541 U.S. at 13. "This exemption takes as its basis the assumption that the employees described in [IRC] section 401(c)(1), namely self-employed individuals (including 'working owners') are legitimate 'participants' within the meaning of Title I." *Id*.

"Also, section 408(b)(1) exempts from section 406's prohibition of specified transactions certain non-discriminatory loans made to plan participants, including highly compensated

10

employees, but section 408(d)(1) eliminates that exemption for owner employees as defined in section 401(c)(3) of the [IRC]. *Id. See also* 29 U.S.C. § 1108; *Yates*, 541 U.S. at 14-15. "In sum, Title I's provisions involving loans to plan participants, by explicit inclusion or exclusion, assume that working owners – shareholders, partners and sole proprietors – may participate in ERISA-qualified benefit plans." *Yates*, 541 U.S. at 15.

3.    TITLE IV OF ERISA AND RELATED IRC PROVISIONS

Title IV of ERISA "is corroborative" of Congress' intent to include working owners in covered benefit plans. *Yates*, 541 U.S. at 13. Title IV does not apply to plans "established and maintained *exclusively* for substantial owners," 29 U.S.C. § 1321(b)(9)(emphasis added), a category that includes sole proprietors and shareholders with a ten percent or greater ownership interest, 29 U.S.C. § 1321(b)(5)(A). But Title IV does cover plans in which substantial owners participate along with other employees. 29 U.S.C. § 1321(b)(5)(B)

Title IV and related IRC provisions also contemplate that a working owner can have dual status, i.e., he can be an employee entitled to participate in a plan and, at the same time, the employer (or owner or member of the employer) who established the plan. *Yates*, 541 U.S. at 16. Both Title IV and the IRC describe the "employer" as a sole proprietor or partner. *See* 29 U.S.C. § 1301(b)(1)("An individual who owns the entire interest in an unincorporated trade or business is treated as his own employer, and a partnership is treated as the employer of each partner who is an employee within the meaning of section 401(c)(1) of [the IRC]"); 26 U.S.C. § 401(c)(4)("an individual who owns the entre interest in an unincorporated trade or business shall be treated as his  own employer. A partnership shall be treated as the employer of each partner who is an employee within the meaning of § 401(c)(1)"). These descriptions expressly anticipate that a working owner can wear two hats, as an employer and an employee. *Yates,* 541 U.S.at 16.

11

4. <u>OBSERVATIONS</u>

What is noteworthy from this statutory review is the absence of limiting definitions as to who can be a "working owner" for purposes of ERISA. There is no uniform definition as to (a) what business the "working owner" is engaged; (b) what type of, if any, work must be performed by a "working owner" or whether such work must be akin to work performed by an employee; (c) how much work, if any, must be performed by a "working owner"; or (d) what ownership percentage must be held to be regarded as a "working owner."

To be sure, there are certain provisions of ERISA and the IRC which reference specific types of "working owner", but these references support a broad, rather than narrow, definition of "working owner." For instance, as previously noted, reference is made to a "self-employed individual." 26 U.S.C. § 401(c)(1)(B). Reference is also made to partners. 29 U.S.C. § 1101(a)(2). That these terms are omitted from other ERISA and IRC provisions purporting to be applicable to "working owners" is instructive. "[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. U.S.*, 464 U.S. 16, 23 (1983)(quoting *U.S. v. Wong Kim Bo*, 472 F.3d 720, 722 (5th Cir. 1972)).

**B.     ERISA Jurisprudence**

1. <u>YATES</u>

In *Yates*, the Supreme Court acknowledged what was evident in the statutory history of ERISA and the IRC – "Congress intended working owners to qualify as plan participants." *Id*. at 16.[17] The Court elaborated:

---

[17] *Yates* noted that ERISA's definitions of "employee" and, in turn, "participant" are uninformative." *Id*. at 12.

> "The working employer's opportunity to participate and gain ERISA coverage serves as an incentive to the creation of plans that will benefit employer and nonowner employees alike. [citation omitted] Treating working owners as participants not only furthers ERISA's purpose to promote and facilitate employee benefit plans. Recognizing the working owner as an ERISA-sheltered plan participant also avoids the anomaly that the same plan will be controlled by discrete regimes: federal law governance for the nonowner employees; state law for the working owner. [citation omitted] ERISA's goal, this Court has emphasized, is 'uniform national treatment of pension benefits.' [citation omitted] Excepting working owners from the federal Act's coverage would generate administrative difficulties and is hardly consistent with a national uniformity goal. [citation omitted]."

*Id*. at 16-17. The Supreme Court thus determined: "If the plan covers one or more employees other than the business owner and his or her spouse, the working owner may participate on equal terms with the other plan participants." *Id*. at 6.

## 2. OBSERVATIONS

Four aspects of the *Yates* opinion are noteworthy here. First is the Court's unquestioning acceptance of the term "working owner." The Court never indicated participation in an employee benefit plan required a different term such as (a) "owner employee;" (b) "full-time working owner;" (c) "working material owner;" or (d) "income producing working owner." Indeed, the Court's analysis indicates that the term "working owner" incorporates many types of working owners such as "working shareholders;" "corporate shareholders;" "partner;" "sole proprietors;" "shareholder employees;" "self-employed individual[s];" and "owner-employees."

Second, the Court was unwilling to identify any restrictions on who could be a working owner. To the contrary, the Court equated "corporate shareholders, partners, and sole proprietors" with "working owners" without regard to any limitations such as (a) in what business is the "working owner" engaged; (b) what type of, if any, work must be performed by the "working owner"; (b) how much work, if any, must be performed by the "working owner"; or (c) what ownership percentage must be held to be regarded as a "working owner." *Id.* at 12-13. That the

Court placed more emphasis on the word "owner" than the word "working" is not surprising, considering the dual recognized goals of "promot[ing] and faciliat[ing] employee benefit plans" and uniform national treatment" of employee benefit plans. *Id*. at 17.

Third, the Court found it unnecessary to address the question of whether a "working owner" must also meet the common law definition of an employee, as articulated *in Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318 (1992). *See Yates*, 541 U.S. at 12 ("there is no need in this case to resort to common law"). The Court found nothing in ERISA or the IRC expressly or implicitly requiring such an exercise. *Id*. Thus, the Court reached the conclusion that Dr. Yates was a "working owner" without undertaking a *Darden* analysis or considering any common law factors.

Finally, the Court was unwilling to identify any ratio of working owners to employees; the only qualification mandated by the Court is that a plan "cover[] one or more employees." *Id*. at 6. Again, this is not surprising considering the dual goals recognized by the Court.

### C. Established Meaning

#### 1. DEFINITIONS

The term "working owner" is neither a complex nor unusual term. As such, it is hardly the kind of term which invites controversy as to its meaning. Indeed, the term "working owner" uses two commonly used words – "working" and "owner." *See Altiris v. Symantec Corp*., 318 F.3d 1363, 1372 (Fed.Cir. 2003)("[S]imply because a phrase lacks a common meaning does not compel a court to abandon its quest for a common meaning and disregard the established meanings of the individual words"). Merriam-Webster defines work as "a specific task, duty, function, or assignment often being a part or phase of some larger activity." *Merriam-Webster Dictionary* (Dec. 20, 2023). Merriam-Webster also recognizes that ownership of any entity can be "a group or organization of owners." *Id*. An owner is defined as "a person who owns something" or "one who has the legal right or title to something." *Id*.

14

2.    OBSERVATIONS

The term "working owner" is certainly broader than the terms "owner employee" or "self-employed individual." While the words "employee" or "employed" denote status, the word "working" denotes function. Furthermore, the term "owner" is not contingent upon a certain level or amount of ownership.

### D.    The DOL Guidance

1.    ADVISORY OPINIONS

Footnote 2 of Advisory Opinion 1999-04A includes the following definition of working owner: "By the term 'working owner,' you apparently mean any individual who has an equity ownership right *of any nature* in a business enterprise and who is *actively engaged in providing services* to that business, as distinguished from a 'passive owner,' who may own shares in a corporation, for example, but is not otherwise involved in the activities in which the business engages for profit [emphasis added]." Significantly, only ERISA and the IRC are relied upon in Advisory Opinion 199-04A; *Darden* is cited only for the proposition that resort to common law is unnecessary where, as with the treatment of "working owners," ample guidance is found in ERISA.

This definition is repeated in Advisory Opinion 2006-04A. The 2006 opinion cites *Yates*: "In that decision, the Court held a working owner of a business may qualify as both an 'employee' and a 'participant' in a pension plan for ERISA purposes, provided there is at least one common law employee of the business other than the working owner and his spouse."

2.    FEDERAL REGISTER NO. 33, NO. 120 (JUNE 21, 2018)

On June 21, 2018, the DOL adopted a new regulation adopting a modified definition of "employer" under ERISA for association health plans. Federal Register No. 33, No. l20 (June 21,

2018).[18] This regulation adopted the term "working owner" which included "an individual … who has an ownership right of *any* nature in a trade or business … including a partner [emphasis added]." 83 Fed.Reg. at 28964.

3.   OBSERVATIONS

Four aspects of the DOL guidance are noteworthy here. First is the acceptance of the term "working owner." The DOL never indicated participation in an employee benefit plan required a different term such as (a) "owner employee"; (b) "full-time working owner"; (c) "working material owner" or (d) "income producing working owner."

Second, the DOL has been unwilling to identify any restrictions on the nature of business ownership. To the contrary, the DOL has opined that a "working owner" is any individual who has an equity or ownership right of *any* nature. This Court made this observation in its Sept. 28, 2020 *Memorandum Opinion and Order.  See Data Marketing Partnership, LP*, 490 F.Supp.3d at 1066 (finding the imposition of a "materiality" standard to be arbitrary and capricious).

Third, the DOL has been unwilling to identify any restrictions on the type of business which may have a working owner as a participant in an ERISA plan. To the contrary, the DOL has opined that a working owner need only be involved in a "business enterprise" or "trade or business."  This Court likewise made this observation in its Sept. 28, 2020 *Memorandum Opinion and Order.  See Data Marketing Partnership, LP*, 490 F.Supp.3d at 1067 ("The Court will not impose an extra-textual view of what … industry in which business enterprises must engage to qualify for ERISA coverage").

Fourth, the DOL has been unwilling to identify any general restrictions on the nature or quantity of services provided by a working owner as a participant in an ERISA plan. To the

---

[18] This regulation was later vacated by the U.S. District Court for the District of Columbia. *See New York v. D.O.L.*, 363 F.Supp.3d 109 (D.D.C. 2019).

contrary, the 1999 and 2006 Advisory Opinions opine that a working owner need only provide some "services." This Court made this same observation in its Sept. 28, 2020 *Memorandum Opinion and Order*. *See Data Marketing Partnership, LP*, 490 F.Supp.3d at 1067 ("The Court will not impose an extra-textual view of what services … in which business enterprises must engage to qualify for ERISA coverage").

III.   **LIMITED PARTNERS OF DMP MEET DEFINITION OF "WORKING OWNER"**

The Fifth Circuit remanded to this Court the task of determining "whether all of the *Yates* factors, including the various provisions of ERISA and the IRC, serve to make these particular working owners qualify as participants." *See Data Marketing Partnership, LP*, 45 F.4th at 858. As set forth above, these factors, which are supported by ERISA and the IRC, established meanings, and the DOL guidance, show that the class of working owners eligible to be plan participants include an individual who (1) has an ownership interest of any nature in a business enterprise of any nature, and (2) who is performing work of any nature or quantity for the business enterprise. Measured against this standard, there is no genuine issue of material fact as to whether the Limited Partners of DMP meeting the Partner Eligibility Requirements are "working owners" eligible to participate in the Plan.

A.   **The Limited Partners are Owners of DMP**

There can be no dispute that DMP's Limited Partners are owners of DMP. It is specifically undisputed that (1) a valid DMP limited partnership agreement exists; (2) "the Limited Partners obtain an ownership interest [in DMP] through the execution of a joinder agreement", (3) "periodically vote on how to organize and market the aggregated "data bank,'" and (4) "exercise management responsibilities over the sale of this data bank to third parties*." See Data Marketing Partnership, LP*, 490 F.Supp.3d at 1066. Unquestionably, the DMP Limited Partners have an equity interest in the partnership. *See Delaney v. Fidelity Lease Ltd.*, 517 S.W.2d 420, 423

17

(Tex.App.- El Paso 1974), rev'd in part, aff's in part, 526 S.W.2d 543 (Tex. 1975)("limited partners … are … akin to shareholders in a corporation").  Defendants cannot point to any facts or circumstances that show the Limited Partners are not actual partners or owners of DMP.

**B.      The Limited Partners Perform Work for DMP**

There also can be no dispute that DMP's Limited Partners meeting the Partner Eligibility Requirements perform work for DMP. It is specifically undisputed that the Limited Partners meeting the Partner Eligibility Requirements (1) "provide personal services for the partnership by contributing electronic data that individually and collectively is a material, income-producing factor for the partnership"; (2) "download specific software on their device, the software collects data, and the data is then aggregated with the other partners' data to form a data bank by the partnership"; (3) "collectively decide what to do with that data bank on behalf of the partnership." *See Data Marketing Partnership, LP*, 490 F.Supp.3d at 1067. "The Limited Partners are not passive owners in the way that a passive owner in a publicly traded corporation will receive distributions without having any say in business operations." *Id*. Unquestionably, therefore, these Limited Partners are working partners. *See Fish v. Texas Legislative Service*, No. 03-10-00358-CV, 2012 WL 25613 at *1 (Tex.App.-Austin Jan. 27, 2012)(using established meanings to distinguish "'working partners', meaning those partners who work in the business, and 'non-working partners', referring to those partners who do not work in the business'"). Defendants cannot point to any facts or circumstances that show the Limited Partners meeting the Partner Eligibility Requirements do not perform work of any kind or quantity for DMP.

## THE LIMITED PARTNERS OF DMP ARE "BONA FIDE PARTNERS"

I.     DEFINITION OF "BONA FIDE PARTNER?"

    A.     § 732 of ERISA

ERISA provides a limited exception to the mandate that a covered employee benefit plan include at least one employee other than the business owner and his or her spouse. This provision applies to partner-only plans. In this regard, § 732(d)(1) of ERISA states:

> "Any plan, fund, or program which would not be (but for this subsection) an employee welfare benefit plan and which is established or maintained by a partnership, to the extent that such plan, fund, or program provides medical care (including items and services paid for as medical care) to present or former partners in the partnership or to their dependents (as defined under the terms of the plan, fund, or program), directly or through insurance, reimbursement, or otherwise, shall be treated (subject to paragraph (2)) as an employee welfare benefit plan which is a group health plan."

29 U.S.C. § 1191a(d)(1).

Section 723(d)(3) further states: "In the case of a group health plan, the term 'participant' also includes … in connection with a group health plan maintained by a partnership, an individual who is a partner in relation to the partnership."  29 U.S.C. § 1191a(d)(3)(A). Significantly, there is no requirement in § 732 that a partner actually perform services for the partnership to be a "participant" in a covered group health plan.

    B.     The DOL Regulations

        1.     29 C.F.R. § 2590.732(d)(2).

ERISA does not include the term "bona fide partner," much less a definition of the term. The DOL regulations implementing § 732 equate employees with "bona fide partners":

> "*Employment relationship*. In the case of a group health plan, the term *employer* also includes the partnership in relation to any bona fide partner. In addition, the term *employee* also includes any bona fide partner. Whether or not an individual is a bona fide partner is determined based on all the relevant facts and circumstances, including whether the individual performs services on behalf of the partnership."

29 C.F.R. § 2590.732(d)(2).

2.    OBSERVATIONS

Much like its definition of "working owner," the DOL in this regulation eschews any specific restrictions on the term "bona fide partner" in favor of a "totality-of-the-circumstances analysis." *See Data Marketing Partnership, LP,* 45 F.4th at 859. "In the law, the totality of the circumstances test refers to a method of analysis where decisions are based on all available information *rather than bright-line rules* [emphasis added]." Kit Kinports, *Probable Cause and Reasonable Suspicion: Totality Tests or Rigid Rules?* 163 U. Pa. L Rev. 75, 75 (2014).

Noticeably absent from the regulation, therefore, are any "bright line rules" as to (1) the type of partner who can be a "bona fide partner;" (2) the type of business in which the partnership must be engaged; or (3) the nature or quantity of services which must be performed by a "bona fide partner."

## C.    ERISA Jurisprudence

Other than the matter at hand, the only ERISA case to construe 29 C.F.R. § 2590.732(d)(2) is *Anderson v. HMO Louisiana, Inc*., No. 23-971, 2023 WL 3477325 (E.D. La. May 16, 2023). In that case, the District Court noted that an LLC, which consisted of two members, was effectively a partnership under Louisiana law. The District Court then determined that one of the members was a "bona fide partner" because he performed services on behalf of the partnership - pulling door dings out of automobiles. *Id*. at *3.

## D.    IRC Jurisprudence

Jurisprudence under the IRC similarly uses a totality-of-the-circumstances analysis in determining whether an individual or entity is a bona fide partner. As stated by the Supreme Court in *C.I.R. v. Culbertson*, 337 U.S. 733, 742 (1949):

"The question is not whether the services or capital contributed by a partner are of sufficient importance to meet some objective standard… but whether, considering all the facts – the agreement, the conduct of the parties in the execution of its provisions, their statements,

the testimony of disinterested persons, the relationship of the parties, their respective abilities and capital contributions, the actual control of income and the purposes for which it is used, and any other facts throwing light on their true intent – the parties in good faith and acting with a business purpose intended to join together in the present conduct of the enterprise."

## II.    THE PLAN IS NOT A PARTNER-ONLY PLAN

There is no genuine issue of material fact here that, in addition to the partners of DMP (general as well as limited), there is at least one common law employee who is a participant in the Plan. There is thus no need here to address the partner-only exception provided by ERISA. Since this issue was remanded to this court, the question of whether the Limited Partners are "bona fide partners" is nevertheless addressed below.

## III.    THE DOL FORFEITED ANY ARGUMENT FOR *AUER* DEFERENCE

### A.    *Auer* Deference is Subject to Waiver

Federal courts often defer to agencies' *reasonable* readings of genuinely ambiguous regulations; the courts call this *Auer* deference. *See Auer v. Robbins*, 519 U.S. 452 (1997). There is nothing special about deference under *Auer* that suggests that an argument concerning that doctrine can't be waived by failing to raise it in a timely manner. *See Overton v. Wilkie*, 30 Vet App. 257, 265 (2018). Federal courts have thus found *Auer* arguments can be subject to waiver. S*ee Mass. Mut. Life Ins. Co. v. U.S.*, 782 F.3d 1354, 1369 (Fed. Cir. 2015). The Fifth Circuit acknowledged as much in this case. *Data Marketing Partnership, LP*, 45 F.4th at 859.

### B.    The DOL Waived *Auer* Deference as to its Construction of 29 C.F.R. § 2590.732(d)(2)

The DOL has had many opportunities to argue for *Auer* deference in this case. In this Court, the DOL filed a *Cross Motion for Summary Judgment* on March 9, 2020 [Doc. 25, 28]. On April 24, 2020, the DOL filed a *Reply* in support of the Cross Motion for Summary Judgment [Doc. 36]. In the Fifth Circuit, the DOL filed a *Brief of Appellants* on March 31, 2021. [Docs. 00515804206]. The agency filed a *Reply Brief of Appellants* on July 13, 2021 [00515936020]. In none of these

21

briefings did the DOL mention *Auer*, much less argue for *Auer* deference as to its interpretation of 29 C.F.R. § 2590.732(d)(2).

IV.   **LIMITED PARTNERS OF DMP MEET DEFINITION OF "BONA FIDE PARTNER"**

The Fifth Circuit remanded to this Court the question of whether under the totality-of-the-circumstances analysis of 29 C.F.R. § 2590.732(d)(2), the Limited Partners here are "bona fide partners." *See Data Marketing Partnership, LP*, 45 F.4th at 859. As set forth above, the totality-of-the-circumstances analysis includes whether an individual (1) is an actual partner of a business enterprise; and (2) performs services on behalf of the partnership. *See Anderson, supra*. Measured against this standard, there is no genuine issue of material fact as to whether the limited partners of DMP meeting the Partner Eligibility Requirements are "bona fide partners" eligible to participate in the Plan.

### A.   The Limited Partners are Actual Partners of DMP

There can be no dispute that DMP's Limited Partners are actual partners of DMP. As previously noted, it is specifically undisputed that (1) a valid DMP limited partnership agreement exists; (2) "the Limited Partners obtain an ownership interest [in DMP] through the execution of a joinder agreement," (3) "periodically vote on how to organize and market the aggregated "data bank,'" and (4) "exercise management responsibilities over the sale of this data bank to third parties*." See Data Marketing Partnership, LP*, 490 F.Supp.3d at 1066.

These are the types of facts and circumstances which have been shown to be indicative of a bona fide partner. *See Culbertson, supra*; *Anderson, supra*. Indeed, Defendants can point to no facts or circumstances which show that the Limited Partners are not actual partners of DMP.

### B.   The Limited Partners Perform Services for DMP

DMP's Limited Partners meeting the Partner Eligibility Requirements perform services for DMP. As previously noted, it is undisputed that the Limited Partners (1) "provide personal services

for the partnership by contributing electronic data that individually and collectively is a material, income-producing factor for the partnership"; (2) "download specific software on their device, the software collects data, and the data is then aggregated with the other partners' data to form a data bank by the partnership"; (3) "collectively decide what to do with that data bank on behalf of the partnership." *See Data Marketing Partnership, LP*, 490 F.Supp.3d at 1067.

These are the types of facts and circumstances which have been shown to be indicative of a bona fide partner. *See Culbertson, supra*; *Anderson, supra.* Indeed, there is no indication in these cases that a bona fide partner must behave like a common-law employee while performing services for the partnership. Defendants can thus point to no facts or circumstances which show that the Limited Partners do not perform services for DMP.

## PERMANENT INJUNCTIVE RELIEF IS STILL WARRANTED

### I.   GOVERNING STANDARD

A permanent injunction is an extraordinary remedy never awarded of right. *Benisek v. Lamone*, ___ U.S. ___; 138 S.Ct. 1942, 1943 (2018). In each case, the courts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief. *Winter v. Nat. Res. Def. Council, Inc.* 555 U.S. 7, 24 (2008).

The standard for a permanent injunction requires a movant to show (1) the substantial likelihood of success on the merits, (2) that he is likely to suffer irreparable harm in the absence of an injunction, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest. *Benisek*, 138 S.Ct. at 1944. The party seeking relief must satisfy a cumulative burden of proving each of the four elements enumerated before an injunction can be granted. *Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987). None of the four prerequisites has a quantitative value. *State of Tex. v. Seatrain Int'l, S.A.*, 518 F.2d 175, 180 (5th Cir. 1975).

## II.   SUCCESS ON THE MERITS

The injunction ordered by this Court on Sept. 28, 2020 was correct as to the merits supportive of a permanent injunction. This Court correctly found that the Plan was an ERISA Plan. *See Data Marketing Partnership, LP*, 490 F.Supp.3d at 1063-68. This Court also correctly found that the Limited Partners are "working owners" as well as "bona fide partners" of DMP. *Id*. Nothing argued by the DOL on appeal showed otherwise. Indeed, the Fifth Circuit only remanded this case back to this Court for a more comprehensive analysis of the questions of whether the Limited Partners are "working owners" and "bona fide partners." As this Brief has shown, there are no genuine issues of material fact with regard to these interpretive questions – the Limited Partners meeting the Partner Eligibility Requirements are unquestionably "working partners" and "bona fide partners."

The parties jointly acknowledged the natural consequence of a finding by this Court that the interpretative tests have been met in their Joint Status Report filed September 14, 2023, and restated by the Court in its Order dated September 15, 2023:  "In their report, the parties confirm that (1) the sole remaining issue is whether the Court should issue a permanent injunction as additional relief beyond the vacatur of the Department of Labor's Advisory Opinion, and (2) the issues remanded by the Fifth Circuit must be addressed for that purpose."  There are thus no remaining issues, nor any plausible objection to permanent injunction.

## III.   IRREPARABLE INJURY

The second requirement for a permanent injunction is irreparable injury. The Plaintiffs must demonstrate "a substantial threat of irreparable injury" if the injunction is not issued. *Texas*, 809 F.3d at 150. For injury to be "irreparable," plaintiffs need only show it cannot be undone through monetary remedies. *Burgess v. Fed. Deposit Inc., Corp.*, 871 F.3d 297, 304 (5th Cir.

2017). Deprivation of a procedural right to protect its concrete interests is irreparable injury. *Texas*, 933 F.3d at 447.

Even though the Advisory Opinion has been vacated, the Plaintiffs are still subject to enforcement action by the Defendants as to the Plan. Nothing prevents Defendants from acting on the view of the law espoused in the now vacated Advisory Opinion. That the Defendants have an alternative enforcement theory and strategy is evidenced by their unsuccessful *Motion to Remand to Agency* previously filed with this Court [Doc. 48].

That such action would result in irreparable harm to Plaintiffs has already been confirmed by this Court's Sept. 28, 2020, *Memorandum Opinion and Order*. As this Court noted, when, as here, an agency has committed itself to a view of the law, it forces a person or entity to "either alter its conduct or expose itself to potential liability." *See Data Marketing Partnership, LP*, 490 F.Supp.3d at 1059. Neither of these options allow for the recovery of monetary remedies.  As this Court has already recognized, therefore, Plaintiffs have already shown they would suffer irreparable injury in the absence of a permanent injunction.

## IV.   BALANCE OF EQUITIES AND PUBLIC INTEREST

Where, as here, the Government is a party to the case, the third and fourth permanent injunction factors merge: the balance of the equities and public interest. *See Nken v. Holder*, 556 U.S. 418, 435 (2009). In this regard, this Court need look no further than the two public interests cited by *Yates* as being Congress's aim in enacting ERISA.

The first public interest is "the incentive to the creation of plans that will benefit employer and nonowner employees alike." *See Yates*, 541 U.S. at 16-17. DMP has created such a Plan consistent with the intent of Congress in enacting ERISA. It is in the public interest to enjoin the Defendants from interfering with a Plan in contravention of this Congress intent.

The second public interest is "national uniform treatment of … benefits." *Id*. at 17. This interest is reinforced by the provisions of ERISA which preempt state regulation of ERISA plans. See 29 U.S.C. § 1144. *See also Gobeille v. Liberty Mutual Co*., 577 U.S. 312, 319-20 (2016) ("ERISA's preemption clause indicates Congress' intent to establish the regulation of employee welfare plans 'as exclusively a federal concern'"). DMP has created such a national Plan. Absent an injunction, however, nothing prevents a state insurance agency from acting on the view espoused in the Advisory Opinion, just as the Defendants threaten now. Indeed, several state agencies have already done so by initiating administrative proceedings against several other LPMS-managed limited partnerships.[19] An injunction based upon ERISA, supported by its preemption provisions, is in the public interest since it would show that state action is beyond their authority and that the Plan is exclusively a federal, not state, concern.

## CONCLUSION

Because Plaintiffs have satisfied all four elements for a permanent injunction to issue, they respectfully request that this Court issue a memorandum opinion and order (1) enjoining Defendants from refusing to acknowledge the ERISA-status of the Plan or refusing to recognize the Limited Partners as working owners or DMP, and (2) awarding such other and further relief to which they may be just entitled.

---

[19] See, *In re Data Partnership Group LP,* Wisconsin Division of Hearings and Appeals, Case No. OCI-23-C45363; *In re LP Management Services LLC*, Wisconsin Division of Hearings and Appeals, Case No. OCI-23-C45363; and *In re Data Partnership Group LP*, *et al.*, Washington State Office of Administrative Hearings, Docket No. 01-2022-INS-00284.

Respectfully submitted this 15th day of January 2024.

/s/ Jonathan D. Crumly, Sr._____
Jonathan D. Crumly, Sr.
*Pro Hac Vice*
**Freeman Mathis & Gary, LLP**
100 Galleria Parkway, Suite 1600
Atlanta, GA 30339
Tel: 770.8180000
Fax: 770.937.9960
Email: Jonathan.Crumly@fmglaw.com

Robert G. Chadwick, Jr.
Texas Bar No. 04056075
**Freeman Mathis & Gary, LLP**
5851 Legacy Circle, Suite 600
Plano, Texas 75024
Tel: 469.895.3003
Fax: 888.356.3602
Email: bob.chadwick@fmglaw.com

Michael L Jones
Texas Bar No. 10929460
**Law Office of Michael Jones**
16901 Dallas Parkway, Suite 202
Addison, TX 75001
Tel: 214-954-9700
Email: mjones@henryandjones.com

**Attorneys For Plaintiffs**

## CERTIFICATE OF SERVICE

On January 15, 2024, I electronically filed the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. I certify that I have served the parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

/s/ Jonathan D. Crumly, Sr._____
Jonathan D. Crumly, Sr.