**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

|  |  |  |
|---|---|---|
| DATA MARKETING PARTNERSHIP, LP, et al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 4:19-cv-00800-O |
| UNITED STATES DEPARTMENT OF LABOR, et al., | ) ) ) | |
| Defendants. | ) ) | |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' AMENDED MOTION FOR LEAVE
TO FILE AND SERVE SUPPLEMENTAL COMPLAINT**

## TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................................i

INTRODUCTION ......................................................................................................................1

BACKGROUND ........................................................................................................................2

I.      The Secretary's Authority Under ERISA ......................................................................2

II.     Procedural History of the Advisory Opinion Litigation ................................................2

III.    Procedural History of the Anjo Investigation and Civil Enforcement Action..................5

LEGAL STANDARD.................................................................................................................7

ARGUMENT .............................................................................................................................8

I.      Plaintiffs' Motion Should Be Denied Because It Would Not Serve Judicial Economy
        to Litigate Plaintiffs' Retaliation Theories In This Nearly-Completed Lawsuit, and
        Instead Would Cause Undue Delay, Prejudice Defendants, and Be Futile. ......................8

        A.      Plaintiffs' Proposed Supplemental Complaint Raises "New and Different"
                Causes of Action That Do Not Stem From the Original Cause of Action..............8

        B.      Plaintiffs' Proposed Supplemental Complaint Would Cause Undue Delay and
                Undue Prejudice..................................................................................................11

        C.      Plaintiffs' Proposed Supplemental Complaint Would Be Futile. ..........................12

                1.      First Amendment Claims (Counts I and II) ...............................................12

                2.      Circumvention of Judicial Authority Claim (Count III)............................16

                3.      APA Claims (Count IV)............................................................................17

        D.      The Court Should Exercise Its Discretion to Deny Plaintiffs' Motion.................19

II.     Alternatively, the Court Should Exercise Its Discretion to Transfer Plaintiffs'
        Proposed Supplemental Complaint to the District of Puerto Rico Under the First-to-
        File Rule and 28 U.S.C. § 1404(a).................................................................................21

        A.      The First-to-File Rule Would Require Transfer of Plaintiffs' Claims to the
                District of Puerto Rico. ......................................................................................21

        B.      Transfer to the District of Puerto Rico Would Be In the Interest of Justice
                under 28 U.S.C. § 1404(a). ................................................................................23

CONCLUSION.........................................................................................................................26

## INTRODUCTION

Plaintiffs seek to convert this Administrative Procedure Act (APA) case—for which post-remand summary judgment briefing has been complete for six months—into a new retaliation case that would require starting over with claims having nothing to do with the fully-briefed merits here. The same retaliation claims have been presented to two other courts without success, and the appropriate forum to finally resolve those claim is the U.S. District Court for the District of Puerto Rico, which is handling the ERISA civil enforcement action that Plaintiffs allege to be retaliatory. *See* Ex. 1, Complaint, *Su v. Suffolk Administrative Services, LLC, et al.*, No. 3:24-CV-01512 (D.P.R.) (referenced throughout as "DOL Compl." or "ERISA enforcement action").

Supplementation of the complaint should be denied because Plaintiffs' new causes of action do not stem from their original claims, but instead raise distinct factual and legal issues intertwined with the merits of the ERISA enforcement action pending in the District of Puerto Rico. Plaintiffs erroneously believe there is a retaliatory motive behind the Department of Labor's entire investigation of ERISA violations by a network of companies related to Plaintiffs, along with pre-filing settlement negotiations and the filing of the ERISA enforcement action. While the Department is prepared to show that its actions are well-founded, that showing should be made in the District of Puerto Rico. Nothing about these new claims concerns whether Plaintiffs' partnership plans are or are not covered by ERISA.

The filing of the supplemental complaint would (i) cause undue delay in resolving Plaintiffs' original complaint; (ii) prejudice Defendants by requiring defense of overlapping issues in two different courts; and (iii) permit claims that are futile because they do not state claims on which relief could be granted. Moreover, the Court should exercise its discretion to deny supplementation because granting such would not serve judicial economy. Alternatively, Defendants cross-move for transfer of these claims to the District of Puerto Rico under the first-

to-file rule and 28 U.S.C. § 1404(a) because convenience and the interests of justice would be better served by permitting a single court to address the merits of the ERISA enforcement action.

## BACKGROUND

### I.    The Secretary's Authority Under ERISA[1]

"ERISA 'has produced a complex and highly technical regulatory program.'" *Meredith v. Time Ins. Co.*, 980 F.2d 352, 357 (5th Cir. 1993) (quotation marks omitted).[2] The statute confers on the Secretary broad administrative powers, including "to supervise enforcement of ERISA, to guarantee uniform compliance with ERISA, to expose and deter plan asset mismanagement, to protect federal revenues, [and] to safeguard the enormous amount of assets and investments funded by ERISA plans." *Herman v. S.C. Nat'l Bank*, 140 F.3d 1413, 1423 (11th Cir. 1998); *see Sec'y of Labor v. Fitzsimmons*, 805 F.2d 682, 689-94 (7th Cir. 1986) (en banc); 29 U.S.C. §§ 1132, 1135. The Secretary's enforcement authority includes bringing an action in federal court to remedy fiduciary breaches and other violations of Title I of ERISA. *See* 29 U.S.C. §§ 1132-39; *see, e.g., Texas Life, Acc. Health & Hosp. Serv. Ins. Guar. Ass'n v. Gaylord Ent. Co.*, 105 F.3d 210, 214 (5th Cir. 1997) ("Only the Secretary of Labor, participants, beneficiaries or fiduciaries of plans may bring suit under [29 U.S.C.] § 1109."); *Reich v. Lancaster*, 55 F.3d 1034 (5th Cir. 1995) (affirming district court's judgment in favor of Secretary's civil enforcement action).

### II.    Procedural History of the Advisory Opinion Litigation

In November 2018, LP Management Services, LLC (LPMS) submitted an advisory opinion request to the Department, which LPMS revised in February 2019. *See* Am. Compl. ¶¶ 70, 75, ECF No. 9. Alexander Renfro submitted the advisory opinion request on behalf of LPMS. *See* Am.

---

[1] For a more complete statement of ERISA's legal framework, *see, e.g.,* Defs.' Opp'n to Pls.' Mot. for Summ. J. at 4-9, ECF No. 64.

[2] Hereinafter, internal citations, quotation marks, and alterations omitted unless otherwise noted.

Compl. Ex. A at 1, ECF No. 9-1. The advisory opinion request stated that LPMS was the general partner "of various Limited Partnerships and manage[s] the day-to-day affairs of these Partnerships." Am. Compl. Ex. A at 1. LPMS sought an opinion regarding whether a plan sponsored by a limited partnership as described in its letter is an "employee welfare benefit plan" within the meaning of ERISA section 3(1), 29 U.S.C. § 1002(1); whether the limited partners in the plan are "participants" within the meaning of ERISA section 3(7); and whether the plan is governed by Title I of ERISA. *See id.* In January 2020, the Department issued its advisory opinion, concluding in light of LPMS's factual representations that the partnerships' health benefits plans administered by LPMS did not qualify as ERISA-covered plans. *See* EBSA Advisory Opinion 2020-01A, Am. Compl. Ex. B, ECF No. 9-2.

Plaintiffs served the complaint in this case in December 2019, *see* ECF Nos. 1, 4, and then filed an amended complaint in February 2020 to challenge the advisory opinion under the APA. The Court considered the parties' cross-motions for summary judgment simultaneously with Plaintiffs' preliminary injunction motion. *See* Scheduling Order, ECF No. 19. Because the Department's advisory opinion was based solely on the factual representations set out in the opinion request, the Department did not conduct any fact-finding during the advisory opinion process, and the parties did not conduct discovery in this litigation. *See* ECF No. 19 ("There will be no discovery conducted by either party."). In September 2020, the Court granted summary judgment to Plaintiffs, "set aside" the advisory opinion as "arbitrary and capricious under the APA and contrary to law under ERISA" and permanently enjoined the Department "from refusing to acknowledge the ERISA-status of the Plan or refusing to recognize the Limited Partners as working owners of DMP." Mem. Op. & Order at 30, ECF No. 37.

In August 2022, the U.S. Court of Appeals for the Fifth Circuit "affirm[ed] the district court's vacatur of the agency action" but "vacate[d] and remand[ed] the district court's injunction for further consideration in light of this opinion." *Data Marketing P'ship v. U.S. Dep't of Labor*, 45 F.4th 846, 851 (5th Cir. 2022). The Fifth Circuit affirmed this Court's conclusions that the advisory opinion was final agency action reviewable under the APA, *id.* at 853-55, and that the advisory opinion was arbitrary and capricious because the advisory opinion did not address two prior advisory opinions or a regulation that adopted a definition of "working owner." *Id.* at 855-58. The Fifth Circuit, however, concluded that this Court "did not perform [the] analysis" required to interpret the terms "working owner" and "bona fide partner" as applied to the particular circumstances here. 45 F.4th at 858-59. The Fifth Circuit vacated this Court's permanent injunction "without opining on whether such relief might be appropriate" because the injunction "turned on the interpretive questions" that this Court had not analyzed. *See id.* at 860. Instead, the Fifth Circuit gave this Court the opportunity "to address certain interpretive questions in the first instance" on remand, *id.* at 858, before any permanent injunction could issue.

After the Fifth Circuit's mandate issued, the Department requested a remand to the agency, *see* ECF No. 48, which the Court denied in August 2023. *See* Opinion & Order, ECF No. 51. The Court then agreed with the parties that "the sole remaining issue is whether the Court should enter a permanent injunction as additional relief beyond the vacatur of the Department of Labor's Advisory Opinion," and set a "post-remand briefing schedule for summary judgment." Order, Sept. 15, 2023, ECF No. 55. Plaintiffs' summary judgment motion as to a permanent injunction has been fully briefed since June 21, 2024. *See* ECF Nos. 56, 64, 65. In the meantime, the parties had engaged in settlement discussions that were ultimately unsuccessful. *See* ECF Nos. 58, 60, 62.

On November 1, 2024, Plaintiffs filed a motion for leave to file a supplemental complaint

raising their retaliatory investigation theories in this Court for the first time, which they amended on November 25, 2024. *See* ECF Nos. 66, 69. The Court granted Defendants an extension through December 20, 2024 to respond to Plaintiffs' amended motion. *See* ECF No. 71.

## III.  Procedural History of the Anjo Investigation and Civil Enforcement Action

On April 29, 2019, the Department opened an investigation into Anjo, LLC (Anjo), a holding company owned by Alexander Renfro. *See* Ex. 2 at 3, *Suffolk Admin. Servs., LLC v. U.S. Dep't of Labor* (*Suffolk*), Case 3:21-cv-01031-DRD (D.P.R. Mar. 28, 2022) (*Suffolk* ECF No. 43); Ex. 3, *Suffolk* Ans. ¶ 52 (*Suffolk* ECF No. 24). At the time, Anjo was a partial owner of Suffolk Administrative Services (SAS) and an indirect partial owner of Providence Insurance Company (PIC). Over a two-year period, the Department had received complaints about health plans and products designed and serviced by PIC and SAS, and the Department began to suspect that the complaints might be related to the plans described in the advisory opinion request submitted by LPMS. Ex. 4, *Suffolk* Compl. ¶ 4 (*Suffolk* ECF No. 1); *Suffolk* Ans. ¶ 52. The complaints involved insurance coverage and alleged misrepresentations about the health benefits covered or improper denials of medical claims. *Suffolk* Ans. ¶ 52. Some of the complaints came to the Department as referrals from state insurance regulators, who (when investigating complaints the state received) were told that the plans were ERISA-covered and thus not within the state's purview. *See id.*

The Anjo investigation's initial purpose was to determine whether the health plans and products designed and serviced by SAS and PIC were covered by ERISA and, if so, whether any ERISA violations had occurred. *See id.* The Department learned through its investigation that SAS and PIC administered health plans belonging to both limited partnerships (such as DMP) and traditional employers unrelated to the partnerships. *See id.* ¶ 63. While the investigation was ongoing, the Department continued to receive complaints and state referrals regarding SAS and PIC plans and related entities, including ten referrals from state insurance regulators between May

2019 and July 2020, as well as one more individual complaint in October 2019. *Id.*

In January 2021, Anjo, SAS, PIC and another related entity, Providence Insurance Partners, LLC (PIP), sued the Department in the District of Puerto Rico, asking the court to stop the Department's investigation on the theory that it was retaliation for Plaintiffs' claims in this case, in violation of the First Amendment, Fifth Amendment, APA, and ERISA. *See* Ex. 2, *Suffolk* Opinion (Mar. 8, 2022). In March 2022, the District of Puerto Rico dismissed the First Amendment claims for lack of ripeness because the Anjo investigation was then ongoing, and court intervention would be premature. *See id.* at 15-17, 26-28; *see also* Ex. 5, *Suffolk* Opinion at 9-10 (Feb. 17, 2023) (*Suffolk* ECF No. 50) (denying Plaintiffs' Rule 59(e) motion).

While that case was pending, in August 2021, the Department filed a petition in the District of Puerto Rico to enforce an administrative subpoena against PIC due to its noncompliance with the ongoing investigation. *See* Ex. 6, Pet. To Enforce, *Walsh v. Providence Ins. Co., I.I.* (*Providence*), Case 3:21-mc-00413-ADC (D.P.R.) (*Providence* ECF No. 1). In response, PIC asserted counterclaims based on the same retaliatory investigation theories. *See* Ex. 7, Answer & Countercl. at 3-30 (*Providence* ECF No. 4). The parties ultimately resolved the subpoena issue without judicial involvement. *See* Ex. 8, Jt. Stip. Of Dismissal (*Providence* ECF No. 21).

Based on its investigation, the Department determined that SAS and PIC, as well as the individuals who indirectly owned them—Renfro, Arjan Zieger, and William Bryan—had violated ERISA with regard to the traditional employer plans serviced by SAS and PIC. Before filing suit, the Department provided notice of its intent to sue in a July 21, 2022 letter, *see* Pls.' Ex. G, ECF No. 69-2, and entered a series of tolling agreements that postponed the filing of the suit while settlement negotiations continued, concluding with an email dated October 31, 2024. *See* Pls.' Ex. O, ECF No. 69-2. The Department unsuccessfully sought a global settlement of all pending claims

between itself on the one side and, Plaintiffs, and Plaintiff's plan vendors (SAS, PIC, and their principals) on the other. The Department filed an ERISA civil enforcement action to remedy these violations in the District of Puerto Rico on November 5, 2024. *See* Ex. 1, DOL Compl.

In its ERISA enforcement action, the Department alleges that (i) SAS and the individual defendants engaged in fiduciary breaches and self-dealing by collecting exorbitant fees for themselves and PIC, without disclosure to the plan clients, *id.* ¶¶ 64-74); (ii) SAS caused the plans to pay excessive fees to marketers and enrollers for the plans, *id.* ¶¶ 75-79; (iii) PIC and the individual defendants knowingly participated in SAS's violations since SAS determined the fees that PIC, its affiliate, received, *id.* ¶¶ 80-85; and (iv) SAS engaged in reporting violations by failing to file reports required of multiple employer welfare arrangements (MEWAs), *id.* ¶¶ 86-87. The Department seeks restoration of the plans' losses, recovery of unjust profits, and other equitable relief. *Id.* ¶¶ 88-100. The ERISA enforcement action seeks restoration of losses by more than 1,900 traditional employer plans that participate in this MEWA, *see id.* ¶ 9; the Department's claims relate only to SAS and PIC's conduct with regard to their administration of and collection of fees from those traditional employer plans; it does not base any asserted losses or seek any recovery regarding DMP's or any limited partnership's plans serviced by SAS and PIC. *Id.* ¶ 2 n.1. The Department's lawsuit is currently pending in the District of Puerto Rico.

## LEGAL STANDARD

Rule 15(d) provides that "[o]n motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d). "[T]he Court *may* permit the filing of a supplemental pleading, but need not do so." *Dizon v. Vectrus Sys. Corp.*, No. 7:22-CV-00040-O-BP, 2023 WL 3727704, at *1 (N.D. Tex. Apr. 27, 2023) (citing *Burns v. Exxon Corp.*, 158 F.3d 336, 343 (5th Cir. 1998)), *report and rec. adopted,* 2023 WL

3737037 (N.D. Tex. May 30, 2023), *appeal dismissed,* No. 23-10734, 2023 WL 9226940 (5th Cir. Oct. 23, 2023), *cert. denied*, No. 23-6450, 2024 WL 4426713 (U.S. Oct. 7, 2024).

"Judicial decisions to grant or deny Rule 15(d) motions to supplement pleadings are generally based on the same factors of fairness courts weigh when considering motions to amend pleadings under Rule 15(a)." *Tomasella v. Div. of Child Support*, No. 3:20-CV-476-S-BH, 2021 WL 3710659, at *2 (N.D. Tex. Aug. 20, 2021). These factors include considerations of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] the futility of amendment." *Tomasella*, 2021 WL 3710659, at *2 (quoting *Schiller v. Phys. Res. Grp. Inc.*, 342 F.3d 563, 566 (5th Cir. 2003)).

"Leave to supplement should not be granted where a plaintiff attempts to present 'new and different cause[s] of action.'" *DeLeon v. Salinas*, No. 1:10-CV-303, 2016 WL 11795864, at *6 (S.D. Tex. Feb. 12, 2016) (ultimately quoting *Griffin v. Cnty. Sch. Bd. of Prince Edward Cnty.*, 377 U.S. 218, 226 (1964)). The supplemental allegations must "stem from the original cause of action." *Mangwiro v. Napolitano*, 939 F. Supp. 2d 639, 647-48 (N.D. Tex. 2013), *aff'd* 554 F. App'x 255 (5th Cir. 2014), (citing *Chemetron Corp. v. Business Funds, Inc.*, 682 F.2d 1149, 1194 (5th Cir. 1982), *vacated on other grounds by* 460 U.S. 1007 (1983)).

## ARGUMENT

### I.    Plaintiffs' Motion Should Be Denied Because It Would Not Serve Judicial Economy to Litigate Plaintiffs' Retaliation Theories In This Nearly-Completed Lawsuit, and Instead Would Cause Undue Delay, Prejudice Defendants, and Be Futile.

#### A.    Plaintiffs' Proposed Supplemental Complaint Raises "New and Different" Causes of Action That Do Not Stem From the Original Cause of Action.

The Court should deny Plaintiffs' motion to file a supplemental complaint at this late stage because the proposed claims do not stem from the original cause of action. *See Mangwiro*, 939 F.

Supp. 2d at 647-48 ("A supplemental pleading may bring in new claims when the subsequent allegations stem from the original cause of action."); *see also DeLeon*, 2016 WL 11795864, at *6 ("Leave to supplement should not be granted where a plaintiff attempts to present 'new and different cause[s] of action.'" (ultimately quoting *Griffin*, 377 U.S. at 226)).

Plaintiffs' retaliatory litigation theories are entirely distinct from the original claims involving the Department's advisory opinion. In *Welsh*, a court in this district denied supplementation because the "[p]laintiff's new claims arose out of separate transactions and occurrences, include allegations of different injuries, and involve distinct questions of fact and law" and accordingly "[t]he supplemental allegations are not relevant to his original claims, and Plaintiff could bring a separate lawsuit to pursue the new claims." *Welsh v. Lamb Cnty.*, No. 5:20-CV-00024-H, 2021 WL 4350595, at *15 (N.D. Tex. Sept. 24, 2021), *aff'd in part, rev'd in part and remanded on other grounds*, No. 22-10124, 2023 WL 3918995 (5th Cir. June 9, 2023). That precisely describes Plaintiffs' proposed supplemental claims, which involve the Department's investigation of entities that are not parties to this case, a civil enforcement action against those non-parties in the District of Puerto Rico, and settlement negotiations that have nothing to do with the merits of this case. Accordingly, the claims present "new and different cause(s) of action" for which supplementation here is not warranted. *See id.*, 2021 WL 4350595, at *15.

Plaintiffs argue that their retaliation claims "stem from" the original claims solely on the ground that the Department was allegedly seeking to "avoid the injunctive relief sought" in this case or "moot the injunctive relief by shutting down the plans." Pls.' Am. Mot. at 5-6, ECF No. 69.[3] Yet they cite no authority for that proposition. It is not enough for the new claims to be

_____

[3] The Department's ERISA enforcement action does not seek to "shut down" any plans. Instead, it seeks to recover losses on behalf of participating ERISA plans. *See supra* Background § III.

"factually related" where the "new allegations do not stem from their original claims." *Mangwiro v. Napolitano*, 939 F. Supp. 2d 639, 648 (N.D. Tex. 2013) (denying supplementation where new claim raised distinct legal theory for new petition). For example, the Sixth Circuit upheld denial of a motion to supplement where the original complaint concerned an allegedly retaliatory denial of a promotion and the proposed supplemental complaint concerned discipline for violations of company policy that were discovered during the first proceeding. *See Hoffman v. Solis*, 636 F.3d 262, 272 (6th Cir. 2011) (holding that the new adverse action arose "under a different set of facts and occurrences than the matter in litigation" even though "the two matters are related"). Similarly, Plaintiffs cannot justify bringing their new retaliation claims here merely because, as Plaintiffs allege (but Defendants do not concede), this suit triggered the supposed retaliation. *Cf. Rogers v. Kwarteng*, No. 2:18-CV-421, 2019 WL 1675953, at *2 (S.D. Tex. Apr. 16, 2019) (denying motion to supplement complaint where "new and different cause of action" concerned claims that "arose after the filing of his amended complaint and out of separate transactions and occurrences as compared to his [pending claims]"); *Walker v. Rheams*, No. 20-260, 2021 WL 11592625, at *2 (M.D. La. Sept. 10, 2021) (denying supplementation where "[t]he proposed new claim regarding access to the courts is wholly different from the claim presently before the Court, which consists only of deliberate indifference"); *DeLeon*, 2016 WL 11795864, at *6 (denying supplementation for various reasons including that it raised "a claim distinct from the alleged giving of advice by private persons on which the litigation [has] been based").

---

While Plaintiffs allege without explanation that "[i]f SAS and PIC stop doing business . . . the Partnership Plans would cease" because "no other vendor . . . provides the [same] services," *see* Proposed Supp. Compl. ¶ 22, there is no reason to think that the plans could not find servicers separate from this interlocking network of companies.

**B.    Plaintiffs' Proposed Supplemental Complaint Would Cause Undue Delay and Undue Prejudice.**

Plaintiffs' motion should also be denied because requiring Defendants to litigate the supplemental complaint in this forum would cause "undue delay" and "undue prejudice" to Defendants. *Tomasella*, 2021 WL 3710659, at *2.

First, this lawsuit was filed more than five years ago, and post-appeal summary judgment briefing has been completed for six months. *See* ECF No. 65. Plaintiffs should not be permitted to upend this case at this late stage. "[W]hen leave to amend is sought after a summary judgment motion has been filed, courts routinely decline to permit the moving party to amend." *Mauer v. Wal-Mart Stores, Inc.*, No. 3:16-CV-2085-BN, 2017 WL 6406619, at *2 (N.D. Tex. Dec. 15, 2017); *Richard v. Zabojnik*, No. 3:19-CV-01568-X, 2020 WL 5094820, at *4 (N.D. Tex. Aug. 28, 2020) ("Ordinarily, this Court takes a dim view of amending pleadings after summary judgment motions are on file."). Courts have found "undue prejudice" where amending would "further delay the disposition of the claims," *Story v. Azaiez*, No. 1:22-CV-00448, 2024 WL 4692031, at *3 (W.D. Tex. June 25, 2024), or where "the nature of the case would be significantly altered." *DeMoore v. Int'l Paper Co.*, No. 3:97-CV-1751, 1998 WL 460281, at *3 (N.D. Tex. July 30, 1998).

Second, the Department should not be required to litigate the merits of its ERISA enforcement action in two different forums, to be decided by two different courts. *See, e.g., KF Indus., Inc. v. Technical Control Sys., Inc.*, 89 F. App'x 881, 885 (5th Cir. 2004) (denying new counterclaims where judicial efficiency would be accomplished by raising those counterclaims in separate forum with related litigation). Plaintiffs' proposed claims rest on the merits of the Department's ERISA litigation against SAS, PIC, and their principals, which the Department is already prosecuting in the District of Puerto Rico. Permitting Plaintiffs to supplement their pleadings here would unduly prejudice Defendants by requiring duplicative effort and risking

inconsistent judicial rulings. In *Waddleton*, the Fifth Circuit emphasized that, "[w]hen ruling on a motion for leave to amend, the court should consider judicial economy and whether the amendments would lead to expeditious disposition of the merits of the litigation[,] ... whether the amendment adds substance to the original allegations, and whether it is germane to the original cause of action." *See Waddleton v. Rodriguez*, 750 F. App'x 248, 257–58 (5th Cir. 2018) (denying leave to amend to add a denial-of-access-to-courts claim); *Cummings v. Stewart*, No. 21-0146, 2021 WL 11085720, at *2 (W.D. La. June 11, 2021) (applying *Waddleton* to deny Rule 15(d) motion). Because Rule 15(d)'s goal is "to make pleadings a means to achieve an orderly and fair administration of justice," *Griffin*, 377 U.S. at 227, supplementation should be denied.

### C.    Plaintiffs' Proposed Supplemental Complaint Would Be Futile.

Plaintiffs' motion should also be denied because their new claims are futile. Supplementation would be futile if "the amended complaint would fail to state a claim upon which relief could be granted." *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 873 (5th Cir. 2000). All four proposed counts are fatally flawed, providing additional reasons to deny this motion.

### 1.    First Amendment Claims (Counts I and II)

Plaintiffs' First Amendment claims are futile for three reasons. First, Counts I and II wrongly seek to impose liability under 42 U.S.C. § 1983 on a federal agency and official capacity federal official. *See* Proposed Supp. Compl. ¶ 29 (claiming relief under this provision); *id.* Counts I, II; *id.* Prayer for Relief ¶ A. It is well established that "a federal agency is [] excluded from the scope of section 1983 liability." *Hoffman v. U.S. Dept. of Housing and Urban Dev.*, 519 F.2d 1160, 1165 (5th Cir. 1975). So, too, for federal officials in their official capacity. *See Broadway v. Block*, 694 F.2d 979, 981 (5th Cir. 1982) ("The individual defendants in this suit are federal officials, acting under color of federal law rather than state law, and are not subject to suit under § 1983."); *Zhang v. Allen*, No. 3:22-CV-02904-S, 2023 WL 9850877, at *2 (N.D. Tex. Nov. 7, 2023), *report*

*and rec. adopted*, 2024 WL 847021 (N.D. Tex. Feb. 27, 2024); *see also Egbert v. Boule*, 596 U.S. 482, 498-99 (2022) ("[T]here is no *Bivens* action for First Amendment retaliation.").

Second, Plaintiffs' First Amendment retaliatory *investigation* theory is futile, regardless of how it is styled, because such claims are not recognized by the Fifth Circuit. *See Colson v. Grohman*, 174 F.3d 498, 512 (5th Cir. 1999) (holding that "criticism, an investigation (or an attempt to start one), and false accusations" are "all harms that ... are not actionable under our First Amendment retaliation jurisprudence"); *Villarreal v. City of Laredo, Texas*, 94 F.4th 374, 398 (5th Cir. 2024) ("Nor does [plaintiff] have an actionable retaliatory investigation claim, because this court does not recognize such a claim."), *judgment vacated on other grounds sub nom. Villarreal v. Alaniz*, No. 23-1155, 2024 WL 4486343 (U.S. Oct. 15, 2024).

Third, Plaintiffs' remaining First Amendment retaliation theories—threatening litigation, pre-filing settlement negotiations, and filing a civil enforcement action—are also futile, regardless of how they are styled. "To prevail on a First Amendment retaliation claim, a plaintiff must show that he was engaged in constitutionally protected activity, the [agency's] actions injured him, and the [agency's] adverse actions were substantially motivated against Plaintiff's exercise of constitutionally protected conduct." *Degenhardt v. Bintliff*, 117 F.4th 747, 758 (5th Cir. 2024) (citation omitted). Threatened litigation is not an adverse action. *See, e.g.*, *Mitchell v. Vanderbilt Univ.*, 389 F.3d 177, 182 (6th Cir. 2004) ("Mere threats ... are generally not sufficient to satisfy the adverse action requirement."). And, a retaliation claim "is only available when non-retaliatory grounds are in fact insufficient to provoke the adverse consequences." *Degenhardt*, 117 F.4th at 758. "It is not enough to show that an official acted with a retaliatory motive and that the plaintiff was injured—the motive must cause the injury." *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019). It must be a "'but-for' cause, meaning that the adverse action against the plaintiff would not have

13

been taken absent the retaliatory motive." *Id.* at 399.

Here, the futility of Plaintiffs' retaliation theory is evident from their failure to plausibly allege but-for causation. Their allegations concern the filing of an ERISA enforcement action against SAS, PIC, and their principals in the District of Puerto Rico, as well as a pre-filing notice of violations and ensuing settlement negotiations. Plaintiffs' entire theory depends on the assertion that the Department made "unsupported allegations of wrongdoing against the Anjo Targets" and included "exorbitant unwarranted monetary demands" in the civil enforcement action and pre-suit settlement negotiations. *See* Proposed Supp. Compl. ¶¶ 114, 122. However, the Department has developed its allegations in its ERISA enforcement action after an extensive investigation, *see supra* Background § III, and will fully litigate its claims in that lawsuit. Plaintiffs cannot show that the Department knowingly filed a meritless ERISA enforcement action nor that the act of the filing "would not have been taken" absent an allegedly retaliatory motive. *Nieves*, 587 U.S. at 399.

Indeed, this Court should follow several other courts in concluding that a First Amendment retaliatory civil enforcement action theory must fail if there was probable cause to file the civil lawsuit. It is well established that probable cause is fatal to retaliatory prosecution or retaliatory arrest theories. *See Nieves*, 587 U.S. at 400-401 ("[P]laintiffs in retaliatory prosecution cases [must] show more than the subjective animus of an officer and a subsequent injury; plaintiffs must also prove as a threshold matter that the decision to press charges was objectively unreasonable because it was not supported by probable cause."); *see also Degenhardt*, 117 F.4th at 760 ("To defeat a retaliatory seizure claim, the officer must, at the very least, have had a lawful justification to seize the property."). Similar logic applies to civil enforcement cases. Analyzing the application of *Nieves* to a civil lawsuit instead of a criminal prosecution, the Eleventh Circuit concluded that "the presence of probable cause will generally defeat a § 1983 First Amendment retaliation claim

14

based on a civil lawsuit as a matter of law." *DeMartini v. Town of Gulf Stream*, 942 F.3d 1277, 1304 (11th Cir. 2019) (noting the importance of "principles that define a government's access to the court to file lawsuits to remedy wrongs on behalf of its citizens"); *see also Meadows v. Enyeart*, 627 F. App'x 496, 505 (6th Cir. 2015) ("[T]he proper analysis at the burden-shifting stage of this regulatory-enforcement case would focus on whether the Defendants had probable cause to bring an administrative proceeding against Berry Meadows."); *Williams v. City of Carl Junction, Missouri*, 480 F.3d 871, 877 (8th Cir. 2007) ("Because [plaintiff] has failed to show that the police and code-enforcement officers lacked probable cause to issue [24 civil and criminal] citations, he cannot establish a necessary element of his retaliatory-prosecution claim.").[4]

Here, Plaintiffs have failed to plead any non-conclusory facts showing that the Department lacked probable cause to file the ERISA enforcement action. *See Bell Ad. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007) (requiring plaintiffs to plead "enough facts to state a claim to relief that is plausible on its face," and the "[f]actual allegations must be enough to raise a right to relief above the speculative level"). The Eleventh Circuit held that "[P]robable cause to initiate [a civil lawsuit] requires no more than a reasonable belief that there is a chance that a claim may be held valid upon adjudication." *DeMartini*, 942 F.3d at 1300–01 (quoting *Pro. Real Est. Invs., Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 62–63 (1993)). Indeed, Plaintiffs plead *no* facts demonstrating that the ERISA enforcement action includes *any* "unwarranted" allegations, nor do they show that the estimated $40 million in self-dealing fiduciary violations was "exorbitant." *See* Proposed Supp. Compl. ¶¶ 114, 122. Therefore, they have also failed to plead facts that could

---

[4] This approach is also supported by Fifth Circuit caselaw regarding retaliatory litigation brought on statutory grounds. *Cf. Bryant v. Mil. Dep't of Mississippi*, 597 F.3d 678, 690 (5th Cir. 2010) (holding that a "retaliatory litigation" claim under 42 U.S.C. § 1985(1) could proceed only if plaintiff carried the burden to show that the lawsuits were "objectively baseless," i.e., sham lawsuits in which "no reasonable litigant could realistically expect success on the merits").

support but-for causation. *Cf. Avdeef v. Royal Bank of Scotland, PLC*, No. 4:13-CV-967-O, 2014 WL 4055369, at *8 (N.D. Tex. Aug. 15, 2014), *aff'd*, 616 F. App'x 665 (5th Cir. 2015), (granting motion to dismiss where plaintiff only "pled vague, conclusory, and unsubstantiated allegations of a conspiracy between the Defendants" and "failed to give specific facts supporting such conspiracy nor has he detailed how the various Defendants were involved in such conspiracy"); *Moody v. Lloyds*, No. 4:14-CV-241-O, 2014 WL 11515598, at *2 (N.D. Tex. Aug. 19, 2014) (granting motion to dismiss because complaint "amounts to a series [of] conclusory statements and legal conclusions that are insufficient to support a plausible claim," such as not "provid[ing] facts to show how the investigation may have been unreasonable").

## 2.    Circumvention of Judicial Authority Claim (Count III)

Plaintiffs likewise cannot prevail on their claim that the Department has "circumvent[ed] this Court's authority to provide [injunctive] relief," Proposed Supp. Compl. ¶ 130, by investigating companies related to Plaintiffs for potential ERISA violations, negotiating pre-suit settlement of those claims, and filing an ERISA enforcement action in the District of Puerto Rico.

Plaintiffs identify no court order that the Department allegedly violated. Indeed, the ERISA enforcement action exclusively concerns failures by SAS, PIC, and their principals to comply with ERISA requirements in their interactions with traditional employer sponsored plans. *See supra,* Background § III. Nor do Plaintiffs identify any authority for the notion that trying to settle a case, including discussion of terms that would involve settlement of multiple cases, could somehow "infringe[] upon this Court's inherent authority in this case." Pls.' Am. Mot. at 6, ECF No. 69.

Indeed, Plaintiffs have failed to specify any legal theory under which the Court's inherent authority could appropriately be exercised. Their discussion merely strings together irrelevant references to authority to enter injunctive relief. For example, Plaintiffs cite *McBride v. Coleman*, 955 F.2d 571, 582-83 (8th Cir. 1992) (Lay, C.J., concurring and dissenting), and *Chilcutt v. U.S.*,

4 F.3d 1313, 1327 (5th Cir 1993), but those cases addressed the appropriate sanction for failure to comply with an injunction already entered by the court. Similarly, *Baum v. Blue Moon Ventures, LLC*, 513 F.3d 181 (5th Cir. 2008), and *Farguson v. MBank Houston, N.A.*, 808 F.2d 358, 359 (5th Cir. 1986), address the circumstances under which a court can "impose a pre-filing injunction to deter vexatious, abusive, and harassing litigation," 513 F.3d at 187, a standard that Plaintiffs do not seek to apply here. And finally, Plaintiffs cite *Kerotest Manufacturing Co. v. C–O–Two Fire Equipment Co.*, 342 U.S. 180 (1952), for the proposition that courts can "enjoin the filing of related lawsuits in other courts," Proposed Supp. Compl. ¶ 12, but that principle has largely developed through the first-to-file rule, which, as discussed in Section II *infra*, militates against the filing of Plaintiffs' supplemental complaint here. *See, e.g.*, *Rittman v. Amazon.com, Inc.*, No. C16-1554-JCC, 2024 WL 4253191, at *2 (W.D. Wash. Sept. 20, 2024).

### 3.    APA Claims (Count IV)

Finally, Plaintiffs' APA claims largely recapitulate their First Amendment claims and thus suffer from all of the same defects discussed above. Moreover, their APA claims suffer from additional defects rendering them nonviable in their own right. Plaintiffs assert that the Department violated the APA by "su[ing] or threaten[ing] imminent litigation against the Anjo Targets, not on the basis of their own actions or inactions, or any losses to the plans which they service, but rather to obstruct, chill, deter, and retaliate against Plaintiffs." Proposed Supp. Compl. ¶¶ 142-144. Plaintiffs have not plausibly alleged a cognizable APA violation.

First, none of the activity that Plaintiffs seek to challenge—including initiation of the investigation, pre-suit notice of an intent to sue, settlement negotiations, and filing a civil enforcement action—is a "final agency action for which there is no other adequate remedy in a court," 5 U.S.C. § 704, and, accordingly, none of these actions can support an APA claim. As the Fifth Circuit has explained, finality has two requirements:

(A) "the action must mark the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature." And (B) "the action must be one by which rights or obligations have been determined, or from which legal consequences will flow."

*Data Marketing P'ship*, 45 F.4th at 853 (quoting *U.S. Army Corps of Eng'rs v. Hawkes Co.*, 578 U.S. 590, 597 (2016)). It is well established that investigations are not final agency actions because legal consequences do not flow from them and they are not the consummation of agency decisionmaking. *See Jobs, Training & Servs., Inc. v. E. Texas Council of Governments*, 50 F.3d 1318, 1324 (5th Cir. 1995) ("[A]n agency's initiation of an investigation does not constitute final agency action."); *Harper v. Werfel*, 118 F.4th 100, 116 (1st Cir. 2024) ("Several of our sister circuits have likewise concluded that investigatory measures are not final agency action." (collecting cases)). Similarly, pre-suit notices and settlement negotiations are inherently not final action. *See, e.g.*, *Nimmrich & Prahm Reederei Gmbh & Co. KG MS Sonja v. United States*, 925 F. Supp. 2d 850, 854–55 (S.D. Tex. 2012) ("[I]t cannot be said on this record that the parties' impasse in their negotiations marks the 'consummation' of the Coast Guard's decision making process . . . Counsel for Respondents has stated that the Coast Guard remains willing to negotiate."); *compare* Proposed Supp. Compl. ¶ 104 (DOL counsel stating, "It appears we have reached an impasse . . . Please advise as soon as possible if anything changes for your clients."). And numerous courts have held that the filing of a civil enforcement action is not final agency action because "any . . . legal consequences are to be determined later by a judge" and the lawsuit itself provides "another adequate remedy." *See City of Oakland v. Lynch*, 798 F.3d 1159, 1166-67 (9th Cir. 2015).[5]

Second, Plaintiffs provide no support for their allegation that the Department's

---

[5] *See also Walsh v. Peters*, No. 18-2933, 2021 WL 1662467, at *7 (D. Md. Apr. 28, 2021); *Endo Pharms. Inc. v. FTC*, 345 F. Supp. 3d 554, 561 (E.D. Pa. 2018); *Am. Fin. Benefits Ctr. v. FTC*, No. 17-04817, 2018 WL 3203391, at *9 (N.D. Cal. May 29, 2018); *Quicken Loans Inc. v. United States*, 152 F. Supp. 3d 938, 948–50 (E.D. Mich. 2015).

investigation, settlement negotiations, or filing of a civil enforcement action are "in excess of statutory . . . authority." 5 U.S.C. § 706(2)(C); Proposed Supp. Compl. ¶¶ 140, 144. This allegation is also contradicted by the fact that each of these activities is plainly within the Department's express statutory authority. *See supra* Background § I.A (citing 29 U.S.C. §§ 1132, 1135).

Third, Plaintiffs' "arbitrary and capricious," "abuse of discretion," and "contrary to constitutional right" theories, Proposed Supp. Compl. ¶¶ 138-139, 142-143, simply recapitulate their First Amendment claims and, accordingly, suffer the same defects discussed above. *See supra* Arg. § I.C.1. Plaintiffs make the conclusory allegation that the ERISA enforcement action was not based on the investigated companies' "own actions or inactions, or any losses to the plans which they service," *see* Proposed Supp. Compl. ¶¶ 142-144, but fail to provide any supporting facts. This is key because, to the extent that the Department's enforcement action is plausible, Plaintiffs cannot prevail under the APA. Without a substantive showing of bad faith—and Plaintiffs offer no facts that could support this—APA claims are limited to the agency's administrative record and support for its actions. *See, e.g.*, *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (holding that review "under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency" and the court must review the agency's "explanation for its action" to "consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment"). Because Plaintiffs fail to include any non-speculative allegations from which the Court could conclude that the ERISA enforcement action is baseless, they cannot show that the Department's actions were unreasonable or an abuse of discretion.

## D.    The Court Should Exercise Its Discretion to Deny Plaintiffs' Motion

Even if the Court rejects some or all of Defendants' prior arguments, the Court should exercise its discretion to deny Plaintiffs' motion. *See Dizon*, 2023 WL 3727704, at *1 ("[T]he

Court *may* permit the filing of a supplemental pleading, but need not do so."). As discussed above, if Plaintiffs' motion is granted, resolution of the new claims would require detailed analysis of the merits of the ERISA enforcement action now pending in the District of Puerto Rico. *See supra* Arg. § I.A-B. The duplicative nature of that analysis—which cannot be avoided in the enforcement action—strongly weighs against embroiling this lawsuit in those claims. "[A] court may 'prophylactically refus[e] to hear a case raising issues that might substantially duplicate those raised by a case pending in another court' in order to 'maximize judicial economy and minimize embarrassing inconsistencies[.]'" *WRR Indus., Inc. v. Prologis*, No. 3:04-CV-2544, 2006 WL 1814126, at \*6 (N.D. Tex. June 30, 2006) (quoting *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 604 (5th Cir. 1999)). The circumstances here are such that "[t]he risk of inconsistent decisions and concerns of judicial economy far outweigh any argument . . . that leave should be allowed under Rule 15(d)." *WRR Indus.*, 2006 WL 1814126, at \*6.

Moreover, because it is highly likely that SAS and PIC will again raise their retaliation theories as counterclaims in the Department's civil enforcement action in the District of Puerto Rico, *see supra* Background Section III (discussing prior rounds of litigation), claim splitting is a substantial concern. *See, e.g.*, *Louisiana v. Horseracing Integrity & Safety Auth. Inc.*, No. 6:22-CV-01934, 2023 WL 6063813, at \*5 (W.D. La. Sept. 13, 2023) (collecting Fifth Circuit caselaw holding that improper claim splitting occurs "where the claims in the more recent suit arise from the same nucleus of operative facts as those advanced in the prior suit and might have been properly asserted in the prior suit" and that the parties need not be identical in both suits where "the parties to the recent suit are in privity with those of the prior suit").

Judicial economy will best be served by permitting the court handling the ERISA enforcement action to also resolve any argument that that lawsuit is retaliatory.

**II.    Alternatively, the Court Should Exercise Its Discretion to Transfer Plaintiffs' Proposed Supplemental Complaint to the District of Puerto Rico Under the First-to-File Rule and 28 U.S.C. § 1404(a).**

Alternatively, if the Court does not intend to deny Plaintiffs' motion, the Court should transfer Plaintiffs' proposed supplemental complaint to the District of Puerto Rico under the first-to-file rule and/or 28 U.S.C. § 1404(a).

**A.    The First-to-File Rule Would Require Transfer of Plaintiffs' Claims to the District of Puerto Rico.**

This Court has repeatedly applied the "first to file" rule "that the court in which an action is first filed determines whether subsequently filed cases involving substantially similar issues should proceed." *Sport Supply Grp., Inc. v. R&G Prods., Inc.*, No. 3:08-CV-02031-O, 2009 WL 10677398, at *2 (N.D. Tex. Sept. 30, 2009). This rule "recognizes principles of comity and sound judicial administration." *Id.* The Department's ERISA enforcement action is the first case that substantively involves the merits of the Department's claims against SAS, PIC, and their principals. *See* Ex. 1 (DOL Compl.).[6] The Court should apply the first-to-file rule and transfer Plaintiffs' new claims to the District of Puerto Rico out of respect for that court. *See Care Ambulance Servs., Inc. v. Scott Griffith Collaborative Sols., LLC*, No. 4:19-CV-00773-O, 2019 WL 13193953, at *2 (N.D. Tex. Dec. 13, 2019) (where "the likelihood of substantial overlap exists, then the proper course of action is for the second-filed court to transfer the case to the first-filed court" so that "[t]he court in the first-filed action can then decide whether the second suit filed must be dismissed, stayed, or transferred and consolidated").

"The federal courts long have recognized that the principle of comity requires federal

---

[6] As set forth in the DOL Complaint, that case was brought in the District of Puerto Rico because that is where SAS and PIC are located. *See* DOL Compl. ¶¶ 10, 12, 14. The ERISA enforcement action could not be brought in this district. *See* 29 U.S.C. § 1132(e)(2) (venue only "where the plan is administered, where the breach took place, or where a defendant resides or may be found").

district courts—courts of coordinate jurisdiction and equal rank—to exercise care to avoid interference with each other's affairs." *West Gulf Maritime Ass'n v. ILA Deep Sea Local 24*, 751 F.2d 721, 728 (5th Cir. 1985). "The concern manifestly is to avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result." *Id.* at 729. The "crucial inquiry is one of 'substantial overlap'" which "exists if the core issues are the same or if much of the proof adduced would likely be identical." *Care Ambulance*, 2019 WL 13193953, at *2. This does not "require that cases be identical" or that "the parties and issues be identical." *Id.*

Here, the substantial overlap between the ERISA enforcement action and Plaintiffs' retaliation claims is plain. Both depend on the merit of the Department's claims against SAS, PIC, and their principals, which involve allegations of self-dealing and fiduciary breach resulting in potential losses to over 1,900 employee benefit plans. *See* DOL Compl. ¶¶ 1-7, 9, 64-79, 94, 96. The parties here and the Department's action are not identical, but they have close business dealings, have the same counsel, and have at least one individual in common where Alexander Renfro represented LPMS and was an officer and partial owner of SAS and PIC. *Compare* Proposed Supp. Compl. ¶ 17 (SAS "co-developed, owns, and provides the intellectual property necessary to operate the Partnership Plans" and PIC "provides reinsurance" for the plans), *and* DOL Compl. ¶¶ 12-16 (describing SAS and PIC's services to health plans as well as Renfro's involvement and ownership). *See, e.g.*, *GHER Sols., LLC v. HEB Grocery Co., LP*, No. 4:19-CV-00655-O, 2019 WL 13214979, at *2 (N.D. Tex. Dec. 12, 2019) (finding similarity of parties where they shared an officer and counsel in common).

Plaintiffs may argue that the ERISA enforcement action is not the first-filed case because they rushed to this Court four days earlier. That argument must be rejected for two reasons. First,

because Plaintiffs must obtain leave of court to lodge their proposed supplemental complaint, their retaliation claims have not yet been filed as claims. *See* ECF Nos. 66, 69. Second, courts apply an exception to the first-to-file rule to where "a party files a declaratory judgment action in anticipation of a suit by its adversary." *Crestview Farm, L.L.C. v. Cambiaso*, No. 4:20-CV-01288-O, 2021 WL 1383135, at *3 (N.D. Tex. Apr. 13, 2021), *reconsidered on other grounds*, 2021 WL 2434845 (N.D. Tex. June 15, 2021). This "anticipatory-suit exception to the first-to-file rule" works to avoid "depriv[ing] a potential plaintiff of his choice of forum and creat[ing] disincentives to responsible litigation by rewarding the winner of a race to the courthouse." *Id.* (quoting *Doubletree Partners, L.P. v. Land Am. Am. Title Co.*, No. 3-08-cv-1547-O, 2008 WL 5119599, at *3 (N.D. Tex. Dec. 3, 2008). Plaintiffs here, like the plaintiff in *Crestview*, "had been engaged in lengthy negotiations" and then "filed suit in [their] home jurisdiction" in anticipation of the imminent filing of the Department's enforcement action; so, even if this motion were deemed a filing under the first-to-file rule, the anticipatory-suit exception should apply. *See id.* at *3.

### B. Transfer to the District of Puerto Rico Would Be In the Interest of Justice under 28 U.S.C. § 1404(a).

Under 28 U.S.C. § 1404(a), a district court may "transfer any civil action to any other district or division where it might have been brought" if such transfer is "[f]or the convenience of the parties and witnesses" and "in the interest of justice." The purpose of such a transfer is "to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964). A party moving for a transfer must show "good cause," *In re Clarke*, 94 F.4th 502, 508 (5th Cir. 2024), based on the following factors:

> The private interest factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive.

The public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law.

*In re Chamber of Com. of United States of Am.*, 105 F.4th 297, 304 (5th Cir. 2024).

The threshold question is whether the Proposed Supplemental Complaint may be brought in a different judicial district. Under 28 U.S.C. § 1391(e), actions against an agency of the United States may be brought in any judicial district where a substantial part of the events or omissions giving rise to the claim occurred. Venue for Plaintiffs' proposed new claims is proper in the District of Puerto Rico because a substantial part of the events underlying Plaintiffs' claims occurred there. *Id.* Both SAS and PIC are located in and conduct business from Puerto Rico. *See* DOL Compl. ¶¶ 12, 14. Plaintiffs explain how SAS and PIC are vendors to the health plans of DMP and other limited partnerships. *See* Proposed Supp. Compl. ¶¶ 53-59. Plaintiffs describe activity between the Department and SAS, PIC, and the individual defendants, centered in Puerto Rico, including the dismissed *Suffolk* lawsuit (Ex. 2), *id.* ¶ 81, and settlement communications "Defendants sent the Anjo Targets," *id.* ¶¶ 82-86, 94-104. Most critically, the Department filed its ERISA enforcement action in the District of Puerto Rico, and Plaintiffs allege that actions contemplated by SAS and PIC in response will impact Plaintiffs' ability to provide health insurance. *Id.* ¶¶ 105-107, 110.

Since the Plaintiff's proposed claims may be brought in Puerto Rico, whether a transfer is proper depends on a showing, based on private and public interests, that Puerto Rico is a clearly more convenient venue. The private interest factors are easily met, since Plaintiffs' claims largely stem from the dispute between the Department and SAS and PIC, who are both located in Puerto Rico. It would thus be more convenient for the parties to access evidence and call witnesses knowledgeable about SAS and PIC from Puerto Rico. Witnesses who work for or are familiar with SAS and PIC could be compelled to testify in district court in Puerto Rico, but not in this Court.

Fed. R. Civ. P. 45(c)(1)(A). Moreover, LPMS, which is located in Georgia, could just as easily travel to and from Puerto Rico as it could this district. *See* Am. Compl. ¶ 28, ECF No. 9.

Similarly, the public interest factors weigh in favor of transfer. Regarding administrative difficulties from court congestion, the Northern District of Texas is a far busier forum than the District of Puerto Rico—the former saw over 7,300 filings in the year ending September 30, 2024, while the latter saw only 1,807. *Federal Court Management Statistics-Profiles*, Sept. 2024 at 7, 34, https://perma.cc/LXK5-J9HQ. In the same period, a judge in this district oversaw an average of 15 trials, while a judge in Puerto Rico oversaw an average of 7. *Id.* The next factor—the local interest in having localized interests decided at home—also weighs in favor of Puerto Rico. This factor focuses on "the significant connections between a particular venue and the events that gave rise to a suit," *Def. Distributed v. Bruck*, 30 F.4th 414, 435 (5th Cir. 2022). Puerto Rico's local interest in the case lies with the claims against two of its businesses. Indeed, Plaintiffs' claims allege potential harm—including closure—that SAS and PIC may suffer in Puerto Rico because of the Department's lawsuit. *See, e.g.*, Proposed Supp. Compl. ¶¶ 105, 110; *see Blanton v. Arrow Ford, Inc.*, 2023 WL 4982258, at *4 (N.D. Tex. Aug. 3, 2023) (weighing the "local interest" based on which division has "the greater interest in resolving these localized injuries").[7]

More importantly, where the merits of Plaintiffs' proposed claims are so closely tied to the merits of the Department's ERISA claims against SAS, PIC, and their principals, transfer is crucial so that both cases may be decided together. Such a move not only furthers the convenience of the parties, but promotes judicial economy by avoiding parallel and possibly conflicting adjudications.

---

[7] The two other public interest factors are neutral; both districts can apply constitutional and federal APA and ERISA law, and a transfer would not implicate any conflict of law issues.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' motion for leave to file and serve supplemental complaint, and alternatively should transfer venue to the District of Puerto Rico.


Dated: December 20, 2024                    Respectfully submitted,

Of Counsel:                                 BRIAN M. BOYNTON
                                            Principal Deputy Assistant Attorney General
SEEMA NANDA
Solicitor of Labor                          JULIE STRAUS HARRIS
                                            Assistant Director
WAYNE R. BERRY                              Civil Division, Federal Programs Branch
Associate Solicitor for Plan Benefits Security

                                            */s/ Galen N. Thorp*
JEFFREY HAHN                                GALEN N. THORP (VA Bar # 75517)
Counsel for Appellate and Special Litigation Senior Trial Counsel
                                            United States Department of Justice
KATRINA LIU                                 Civil Division, Federal Programs Branch
Senior Trial Attorney                       1100 L Street NW
                                            Washington, D.C. 20530
JAMIE BOWERS                                Tel: (202) 514-4781 / Fax: (202) 616-8460
Trial Attorney                              galen.thorp@usdoj.gov
United States Department of Labor
Office of the Solicitor                     *Counsel for Defendants*

<u>CERTIFICATE OF SERVICE</u>

On December 20, 2024, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all parties to this action electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

*/s/ Galen N. Thorp*
GALEN N. THORP
