IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORTH WORTH DIVISION

| | |
|---|---|
| DATA MARKETING PARTNERSHIP, LP, et al., | )<br>)<br>) |
| Plaintiffs, | )<br>)<br>) |
| v. | ) Civil Action No. 4:19-cv-00800-O<br>)<br>) |
| UNITED STATES DEPARTMENT OF LABOR, et al., | )<br>)<br>) |
| Defendants. | )<br>) |

**REPLY IN SUPPORT OF PLAINTIFFS' AMENDED MOTION FOR
LEAVE TO FILE AND SERVE SUPPLEMENTAL COMPLAINT**

**INTRODUCTION**

The only remedy sought by the proposed *Supplemental Complaint* is a limited supplementation of the injunction previously issued by this Court the reinstatement of which is the only issue on remand by the Fifth Circuit. That injunction enjoined Defendants "from refusing to recognize the ERISA status of the [DMP Partnership] Plan." Plaintiffs seek to supplement this injunction to expressly enjoin Defendants from continuing to engage in conduct intended to circumvent, moot, or otherwise thwart this injunction.

Contrary to the arguments of *Defendants' Opposition* [Doc. 72], this limited relief is (1) inextricably intertwined with Plaintiffs' *First Amended Complaint* [Doc. 9] as it relates to the integrity of injunctive relief sought by such pleading; (2) incapable, for myriad reasons, of being litigated as part of the later filed Puerto Rico suit; (3) not barred by Defendants' self-serving delay arguments; (4) governed by federal jurisprudence as to the availability of prospective injunctive relief rather than jurisprudence as to the availability of damages for Defendants' past conduct which are not sought by Plaintiffs; and (5) necessary to promote the interests of justice.

1

# ARGUMENT
## I. THE *SUPPLEMENTAL COMPLAINT* IS INEXTRICABLY INTERTWINED WITH THE *FIRST AMENDED COMPLAINT*

Here, the proposed *Supplemental Complaint* alleges improper conduct by Defendants as it relates to this suit. Specifically, the proposed pleading alleges Defendants have engaged in conduct calculated either to (1) coerce Plaintiffs to dismiss this suit and withdraw the request for advisory opinion challenged in this suit; or (2) moot this suit by depriving Plaintiffs of the vendor services necessary to operate the Plan which is the subject of the suit. The proposed pleading otherwise seeks to supplement relief already sought by the *First Amended Complaint*. The proposed pleading thus cannot exist separate and apart from Plaintiffs' *First Amended Complaint* and the relief requested therein.

To the extent *Defendants' Opposition* argues otherwise it relies only upon inapposite cases which involved underlying conduct unrelated to the litigation itself. *Welsh v. Lamb Cnty*, No. 5:20-CV-00024-H, 2021 WL 4350595 at *15 (N.D.Tex. Sept. 24, 2021), *aff'd in part, rev'd in part and remanded on other grounds*, No. 22-10124, 2023 WL 3918995 (5th Cir. June 9, 2023), for instance, this court denied leave to file a supplemental complaint as to underlying "transactions and occurrences" which were "separate" from the underlying transactions and occurrences alleged in the original complaint. Similar reasoning formed the bases for the denial of leave to file an amended or supplemental complaint in *Waddleton v. Rodriguez*, 750 Fed.Appx. 248 (5th Cir. 2018); *Mangwiro v. Napolitano*, 939 F.Supp.2d 639 (N.D.Tex. 2013); *Hoffman v. Solis*, 636 F.3d 262 (6th Cir. 2011); *Rogers v. Kwarteng*, No. 2:18-CV-421, 2019 WL 1675953 (S.D.Tex. Apr. 16, 2019); *Walker v. Rheams*, No. 20-260, 2021 WL 11592625 (M.D.La. Sept. 10, 2021); *DeLeon v. Salinas*, No. 1:10-CV-303, 2016 WL 11795864 (S.D.Tex. Feb. 12, 2016); *Cummings v. Stewart*, No. 21-0146, 2021 WL 11085720 (W.D.La. June 11, 2021). These cases simply do not support denial of a supplementary pleading alleging misconduct related to the litigation itself.

Indeed, *Defendants' Opposition* cites no relevant case law to support the argument that the proposed *Supplemental Complaint* here alleges "new and different causes of action that do not stem from the original cause of action" alleged in the *First Amended Complaint*. Such omission is not surprising as it is undeniable the allegations of the proposed *Supplemental Complaint* do stem from the original claims of the *First Amended Complaint*.

## II. THE *SUPPLEMENTAL COMPLAINT* IS INCAPABLE OF BEING LITIGATED AS PART OF THE PUERTO RICO SUIT

Although *Defendants' Opposition* argues that the Puerto Rico suit, rather than this suit, is the proper suit for the proposed *Supplemental Complaint,* five undisputed considerations are fatal to this argument.

First, the nature of the relief sought in this suit is different from the relief sought in the Puerto Rico suit. Here, Plaintiffs seek declaratory and prospective injunctive relief as to employee welfare plans of which they are the sponsors. The Puerto Rico suit primarily seeks damages against Plaintiff's vendors in the amount of $40 million for alleged ERISA violations.

Second, the conduct alleged by the proposed *Supplemental Complaint* relates to the conduct of Defendants as it relates to this suit, not the Puerto Rico suit. As further alleged in the proposed *Supplemental Complaint*, it was Defendants who tied to the fate of the threatened suit against Plaintiffs' vendors to Plaintiffs withdrawal of their request for advisory opinion and dismissal of this suit. As to Plaintiffs, such conduct implicates the affairs of this Court and this suit, not the affairs of the Puerto Rico court and the suit filed therein against Plaintiffs' vendors. Contrary to the arguments of *Defendants' Opposition*, therefore, the principles of comity cited therein actually compel the resolution of the proposed *Supplemental Complaint* in this Court, not Puerto Rico. *See e.g., West Gulf Maritime Ass'n v. ILA Deep Sea Local 24*, 75 F.2d 721, 728 (5th Cir. 1985).

Third, Plaintiffs are not parties to the Puerto Rico Suit. The only defendants named by the Puerto Rico suit are Plaintiffs' vendors and their agents and principals. The only litigation common to Plaintiffs and Defendants, therefore, is this suit.

Fourth, this suit predates the Puerto Rico suit by more than four years. As set forth further in the proposed *Supplemental Complaint*, it was Defendants who determined this suit and the threatened suit against Plaintiffs' vendors involved sufficiently similar issues to propose global settlement discussions which tied this suit to the threatened suit against Plaintiffs' vendors. To now allege the Puerto Rico suit came first is disingenuous; these settlement negotiations openly acknowledged this suit as the earlier filed. Contrary to the arguments of *Defendants' Opposition*, therefore, the "first to file" rule cited therein compels the resolution of the proposed *Supplemental Complaint* in this Court, not Puerto Rico. *See, e.g., Sport Supply Grp., Inc. v. R&G Prods., Inc.*, No. 3:08-CV-02031-O. 2009 WL 10677398 at *2 (N.D.Tex. Sept. 30, 2009).

Finally, it is well settled that once issued an injunction is generally enforced by the court that issued the injunction. *See Baker v. General Motors Corp.*, 522 U.S. 22, 236 (1998). Here, it is undisputed the issue currently before the Court is whether to reinstate the injunction originally issued by this Court on Sept. 28, 2020. It is likewise undisputed the relief sought by the proposed *Supplemental Complaint* is a supplemental injunction which seeks to provide teeth to the first injunction by expressly enjoining Defendants from conduct intended to circumvent, moot, or otherwise thwart the injunction. Under well settled law, therefore, it is up to this Court, not a Puerto Rico court, to determine the scope of injunctive relief available to Plaintiffs in this case.

In the final analysis, therefore, the existence of subsequently filed litigation in Puerto Rico simply provides no legal basis to deny leave to file the proposed *Supplemental Complaint* in this case or to order the transfer of this case to Puerto Rico.

### III. THE *SUPPLEMENTAL COMPLAINT* IS NOT BARRED BY DEFENDANTS' SELF-SERVING DELAY ARGUMENTS

*Defendants' Opposition* makes complaints regarding the timing of the motion seeking leave to file the proposed *Supplemental Complaint*. None of these complaints are persuasive.

First, as alleged more fully in the proposed *Supplemental Complaint*, Defendants expressly tied the fate of threatened litigation against Plaintiffs' vendors to this suit only after *Plaintiffs' Motion for Summary Judgment* [Doc. 56] was filed on Jan. 15, 2024. Moreover, it is Plaintiffs who are seeking to file a motion for leave to file a supplemental pleading after moving for summary judgment. The reasons for seeking leave to file the proposed *Supplemental Complaint* are thus entirely different from the cases cited by *Defendants' Opposition* which denied leave to amend a pleading in response to a motion for summary judgment is filed by the opposing party. *See, e.g, Mauer v. Wal-Mart Stores, Inc.*, No. 3:16-CV-2085-BN, 2017 WL 6406619 (N.D.Tex. Dec. 15, 2017); *Richard v. Zabojnik*, No. 3:19-CV-01568-X, 2020 WL 5094820 (N.D.Tex. Aug. 28, 2020).

Second, the mere fact Plaintiffs are seeking to file the proposed *Supplemental Complaint* is no reason to delay ruling on *Plaintiffs' Motion for Summary Judgment*. The question of whether to reinstate this Court's Sept. 28, 2020 injunction has been fully briefed. The only question presented by the proposed *Supplemental Complaint* is whether to supplement the reinstated injunction with additional teeth expressly enjoining Defendants conduct intended to circumvent, moot, or otherwise thwart the injunction. There is no reason why these questions cannot be ruled upon sequentially by the Court rather than simultaneously as presumed by *Defendants' Opposition*.

In the final analysis, therefore, Defendants' complaints of delay can only be construed as disingenuous and self-serving efforts to escape responsibility for their own actions.

## IV. THE *SUPPLEMENTAL COMPLAINT* IS SUPPORTED BY JURISPRUDENCE REGARDING INJUNCTIVE RELIEF
### A. Availability of Injunctive Relief

Plaintiffs do not seek damages in the proposed *Supplemental Complaint* for past actions by Defendants. The citations of *Defendant's Opposition* as to the burdens necessary to the recovery of damages against governmental entities and officials are thus inapposite in deciding whether to grant leave to file the proposed *Supplemental Complaint*. *See, e.g., Nieves v. Bartlett,* 587 U.S. 391, 398 (2019); *Degenhardt v. Bintliff,* 117 Fed.4th 747, 758 (5th Cir. 2024); *DeMartini v. Town of Gulf Stream*, 942 F.3d 1277, 1304 (11th Cir. 2019); *Meadows v. Enyeart*, 627 F.Appx, 496, 505 (6th Cir. 2015); *Williams v. City of Carl Junction, Missouri,* 480 F.3d 871,877 (8th Cir. 2007); *Mitchell v. Vanderbilt*, 389 F.3d 177, 182 (6th Cir. 2004).

Rather, Plaintiffs seek prospective injunctive relief expressly enjoining Defendants from continuing to engage in conduct intended to circumvent, moot or otherwise thwart the Sept. 28, 2020 injunction upon its reinstatement by this Court. Such relief is authorized by Supreme Court precedent. *See Bowen v. Massachusetts*, 487 U.S. 879, 893 (1988)(Allowing suit for declaratory or injunctive relief against federal agency).

Although the proposed *Supplemental Complaint* is based upon allegations related to the First Amendment, the Administrative Procedures Act, and this Court's inherent authority, the primary basis for the proposed pleading is the First Amendment right of petition. It is settled law federal courts are empowered to issue general injunctive relief that enjoins a government defendant from retaliating against or otherwise infringing upon a plaintiff's rights under the First Amendment. *Mahan v. Tex. Dept. of Pub. Safety*, No. 9:20-CV-119-RC-ZJH, 2020 WL 6935555 at *3 (E.D.Tex. Oct. 29, 2020). Retaliation, though not expressly referenced in the Constitution, is nonetheless actionable because retaliatory actions may tend to chill individuals' exercise of constitutional rights." *ACLU of Md., Inc. v. Wicomico County,* 999 F.2d 780, 785 (4th Cir. 1993).

6

### B. Scope of First Amendment Right of Petition

The First Amendment "right to petition the government for a redress of grievances is "one of the most precious of the liberties safeguarded by the Bill of Rights," and is "high in the hierarchy of First Amendment values." *Lozman v. City of Riviera Beach, Fla.*, 585 U.S. 87, 101 (2018). "The right to petition is cut from the same cloth as the other guarantees of [the First] Amendment, and is an assurance of a particular expression of freedom." *McDonald v. Smith,* 472 U.S. 479, 482 (1985). The right to petition the government for redress of grievances is such a fundamental right as to be "implied by '[t]he very idea of a government, republican in form.'"*BE & K Const*. v. NLRB, 536 U.S. 516, 524–25 (2002).

The right to petition "extends to all departments of the Government", including administrative agencies and courts. *Cal. Motor Transport Co. v. Trucking Unlimited,* 404 U.S. 508, 510 (1972) ("The right of access to the courts is indeed but one aspect of the right of petition"). The right to petition includes not just petitions to redress grievances but petitions to influence government action. *E.R.R. Pres. Conf. v. Noerr Motor Freight, Inc.,* 365 U.S. 127, 143 (1961). It is a violation of the First Amendment for the federal government to directly or indirectly thwart, or endeavor to thwart, the availability of judicial machinery to resolve disputes with a federal court. *Doe v. Schneider*, 443 F.Supp. 780, 787 (D.Kan. 1978). An unconstitutional deprivation of the right of access to the courts takes place "when government officials thwart vindication of a claim by violating basic principles that enable civil claimants to assert their rights effectively." *Barrett v. U.S.*., 798 F.2d 565, 575 (2nd Cir. 1986).

### C. First Amendment Prevents Coercion/Suppression of Otherwise Lawful Conduct

Even otherwise lawful conduct by government officials can run afoul of the First Amendment. In *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 67 (1963), the Supreme Court

7

affirmed the First Amendment bars government officials from relying on the "threat of invoking legal sanctions and other means of coercion … to achieve the suppression" of disfavored speech.

Just this past term, in *NRA v. Vullo*, 602 U.S. 175 (2024), the Supreme Court acknowledged in a 9-0 decision that actionable coercion includes actions directed at vendors which do business with the person or entity who exercises rights guaranteed by the First Amendment. In that case, the Court addressed regulatory action by Maria Vullo, the Superintendent of the New York Department of Financial Services, against NLRA-endorsed insurance programs. Significantly, the Court opined:

> "The conceded illegality of the NLRA-endorsed insurance programs does not insulate Vullo from First Amendment scrutiny under … *Bantam Books*. … [A]lthough Vullo can pursue violations of state insurance law, she cannot do so in order to punish or suppress the NLRA's protected expression. So, the contention that the NLRA and the insurers violated New York law does not excuse Vullo from allegedly employing coercive threats to stifle gun-promotion advocacy."

*Id*. at 196.

Similarly, in *American Motor Club, Inc. v. Corcoran*, 644 F.Supp. 862 (S.D.N.Y. 1986), the U.S. District Court for the Southern District of New York issued a preliminary injunction against the New York Department of Insurance which, in response to a civil rights action against the Department by an automobile club, allegedly threatened the licenses of brokers who sold memberships in the automobile club. *See also Floridians Protecting Freedom, Inc. v. Ladapo*, et al, Case No. 4:24-cv-00419, 2024 WL 4518291 (N.D. Fla).

To the extent *Defendants' Opposition* claims Plaintiff must allege and show Defendants did not have probable cause to file the Puerto Rico suit, therefore, that is not an allegation and showing which needs to be made to survive a motion to dismiss. The jurisprudence cited above shows that the First Amendment can be violated even with probable cause and even if Plaintiffs' vendors acted illegally. The operative question is not whether Defendants had probable cause to

file the Puerto Rico suit; rather, the operative question is whether the Puerto Rico suit is calculated to coerce or suppress Plaintiffs' right of petition as to their request for advisory opinion and this suit. In this regard, the proposed *Supplemental Complaint* contains more than sufficient allegations to overcome the allegations of futility set forth in *Defendants' Opposition*.

## V. THE *SUPPLEMENTAL COMPLAINT* IS NECESSARY TO PROMOTE JUSTICE

Defendants claim prejudice if leave is granted to file the proposed *Supplemental Complaint*, but the potential prejudice to Plaintiffs if leave is not granted is even greater - a continuing violation of their First Amendment right of petition. The precedent which would be sent if Defendants are not even made to answer the allegations in the proposed *Supplemental Complaint* would be even more prejudicial. That precedent would enable federal agencies to use coercion to deter or dismiss lawsuits against them based upon threatened or actual litigation against their vendors. The result would be a greatly diminished right to petition under the First Amendment.

## CONCLUSION

For these reasons, and the reasons set forth in the proposed *Supplemental Complaint* and *Defendants' Amended Motion for Leave to File and Serve Supplemental Complaint,* Plaintiffs respectfully request that this Court issue a memorandum opinion and order (1) granting leave to file the proposed *Supplemental Complaint*, and (2) awarding such other and further relief to which they may be just entitled.

Respectfully submitted this 10th day of January 2025.

    s/ Jonathan D. Crumly, Sr.
Jonathan D. Crumly, Sr.
*Pro Hac Vice*
**Freeman Mathis & Gary, LLP**
100 Galleria Parkway, Suite 1600
Atlanta, GA 30339
Tel: 770.8180000
Fax: 770.937.9960
Email: Jonathan.Crumly@fmglaw.com

Robert G. Chadwick, Jr.
Texas Bar No. 04056075
**Freeman Mathis & Gary, LLP**
7160 Dallas Parkway, Suite 625
Plano, Texas 75024
Tel: 469.895.3003
Fax: 888.356.3602
Email: bob.chadwick@fmglaw.com

Michael L Jones
Texas Bar No. 10929460
**Law Office of Michael Jones**
16901 Dallas Parkway, Suite 202
Addison, TX 75001
Tel: 214-954-9700
Email: mjones@henryandjones.com

**Attorneys For Plaintiffs**

### CERTIFICATE OF SERVICE

On January 10, 2025, I electronically filed the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. I certify that I have served the parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

    /s/ *Robert G. Chadwick, Jr.*
Robert G. Chadwick Jr.